BOARD OF TRUSTEES OF THE FIRE AND POLICE
EMPLOYEES RETIREMENT SYSTEM OF THE
CITY OF BALTIMORE v. STEPHEN
J. CHES, JR.

[No. 316, September Term, 1981.]

*Decided November 6, 1981.*

The cause was argued before GILBERT, C. J., and MOORE
and MacDANIEL, JJ.

*Richard LaFata,* with whom were *Benjamin L. Brown,
City Solicitor of Baltimore City, Sheldon H. Press, Chief
Solicitor of Baltimore City,* and *L. William Gawlik,
Assistant Solicitor of Baltimore City,* on the brief, for appel-
lant.

*Leslie L. Gladstone* for appellee.

MacDANIEL, J., delivered the opinion of the Court. GILBERT, C. J., dissents and files a dissenting opinion at page 207 *infra.*

Stephen J. Ches, Jr., (appellee), commenced employment with the Baltimore City Police Department (the Department) on February 4, 1954, and on June 27, 1979, filed an application for retirement with special disability benefits with the Board of Trustees of the Fire and Police Employees Retirement System of the City of Baltimore (the Board) appellant, as provided by Baltimore City Code (1976 Ed.) Art. 22, § 34 (e), which reads as follows:

"(e) *Special disability benefit.* Upon the application of a member or the head of his department, any member who has been totally and permanently incapacitated for duty as the result of an injury arising out of and in the course of the actual performance of duty, without wilful negligence on his part, shall be retired by the Board of Trustees, provided that the medical board shall certify that such member is physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired."

The Board retired appellee and awarded him an "ordinary disability" [1] allowance, but denied "special disability" benefits. Appellee then filed a petition for a writ of mandamus to compel the Board to award him the special benefits

---

1. Art. 22, § 34 (c) reads as follows:

"(c) *Ordinary disability retirement benefit.* Upon the application of a member in service or of head of his department, any member who has acquired five or more years of service may be retired by the Board of Trustees, not less than thirty and not more than ninety days next following the date of filing such application, on an ordinary disability retirement allowance, provided that the medical board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired."

originally applied for. After a hearing on the merits in the Superior Court of Baltimore on January 7, 1981, the petition for writ of mandamus was granted. The Board appeals that ruling.

The Board contends that there was competent, material and substantial evidence supporting its decision, therefore making the lower court's reversal of its decision clearly erroneous.

In determining whether or not an administrative agency's decision is arbitrary or capricious, we refer to the standard announced in *Adams v. Board of Trustees,* 215 Md. 188 (1957), at 193-94, where the Court of Appeals stated:

"The function of a court in reviewing a case such as this was clearly set forth in *Hecht v. Crook* (1945), 184 Md. 271, 40 A.2d 673. As Judge Henderson said so well at pages 280-81:

'* * * the question as to what decisions of an administrative agency are reviewable must turn upon the statute creating it, and upon the type and degree of discretion conferred upon the particular agency. Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative discretion, where discretion is clearly conferred.'

Again in *Heaps v. Cobb* (1945), 185 Md. 372, 45 A.2d 73, this Court said at page 380, quoting from the California Law Review:

' "With respect to the issues of fact, the reviewing court examines the evidence taken by the administrative agency, not to re-weigh

it, not to substitute the Court's judgment for that of the agency, but to determine whether the agency acted rationally, that is to say, that it did not arrive at its conclusion arbitrarily." '

Thus it is clear that the function of the trial court was to determine whether the Board was arbitrary when it 'disapproved the accidental disability retirement' for the petitioner by a vote of four to one."

Again, the function of the lower court was summed up by Judge Jerrold V. Powers for this Court in *Comm'r v. Cason,* 34 Md. App. 487 (1977), at 508:

"A reviewing court may, and should, examine any inference, drawn by an agency, of the existence of a fact not shown by direct proof, to see if that inference reasonably follows from other facts which are shown by direct proof. If it does, even though the agency might reasonably have drawn a different inference, the court has no power to disagree with the fact so inferred.

A reviewing court may, and should, examine any conclusion reached by an agency, to see whether reasoning minds could reasonably reach that conclusion from facts in the record before the agency, by direct proof, or by permissible inference. If the conclusion could be so reached, then it is based upon substantial evidence, and the court has no power to reject that conclusion.

A reviewing court may, and should, examine facts found by an agency, to see if there was evidence to support each fact found. If there was evidence of the fact in the record before the agency, no matter how conflicting, or how questionable the credibility of the source of the evidence, the court has no power to substitute its assessment of credibility for that made by the agency, and by doing so, reject the fact."

With this in mind, we turn to a case very similar to the case *sub judice* that narrows down the issues: *Board of Trustees v. Rollins,* 269 Md. 722 (1973), which states at 725:

"Our predecessors identified the issues in *Adams,* 215 Md. at 194-95, 137 A.2d at 154-55:

'The Medical Board, having certified that the petitioner was mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that he should be retired, the ordinance makes it clear that the Board [of Trustees] had to decide (i) whether the incapacity to perform his duty was the natural and proximate result of an accident which occurred while the petitioner was in the actual performance of his duty at some definite time and place, and (ii) if there was an accident, whether it was caused without wilful negligence on the part of the petitioner. * * * [T]here is ample testimony by the petitioner, corroborated by the engine company lieutenant and the fire department physician who first examined him, as to how, when and where he was injured. * * * Thus the only *real* decision the Board had to make was whether the petitioner became incapacitated as the natural and proximate result of the only accident of which there was any proof.' (Emphasis in original.)

It seems clear to us that the only issue before the Board in this case was whether Rollins' incapacity was the natural and proximate result of what Art. 22, § 34 (e) describes as 'an injury arising out of and in the course of the actual performance of duty, without wilful negligence on his part.' There is not the slightest intimation that the accident was a result of Rollins' negligence, because the rear end collision occurred when he had stopped at a traffic light." (Footnote omitted.)

When appellee applied for an award of special disability benefits, he claimed that he became totally and permanently disabled as a result of an injury sustained on August 1, 1977, when the police car he was operating was struck in the rear by a tractor-trailer.

The medical board examined appellee on August 3, 1979, and filed a report with the Board of Trustees, in which they concluded:

"Post traumatic arthritis, right acromia clavicular joint, with minimum x-ray deformity and maximal non-physiological loss of function, unresponsive to various modalities of treatment.

Marked obesity.

Uncontrolled hypertension.

1. Is he or she physically incapacitated? Yes, for full police duties.

2. Is he or she mentally incapacitated? No

3. Is such incapacity likely to be permanent? Yes, for full police duties.

The medical board hereby certifies that because of the above described condition Mr. Stephen J. Ches, Jr. is incapacitated for the performance of duty and ought to be retired."

It is clear that appellee suffered an injury, with no wilful negligence on his part, as the result of an accident which occurred on August 1, 1977,[2] while he was in the actual performance of his duty. It is equally clear, as determined by the medical board, that appellee was incapacitated, that his injury was likely to be permanent, and that he ought to have been retired. Therefore, the only issue remaining for the

---

**2.** In the civil litigation arising out of the accident appellee was awarded $36,000 for his injuries; and $5,000 for loss of consortium was awarded jointly to appellee and his wife.

Board of Trustees' determination was whether appellee's incapacity, warranting retirement, was "the natural and proximate result" of those injuries.

The Board is charged with determining whether appellee's disability was the natural and proximate result of the August 1, 1977 accident or some other cause. In making its determination the Board acts as a quasi-judicial body. It makes findings of fact and draws inferences from the evidence adduced much like a trial judge in a non-jury trial.

At the conclusion of the hearing, the Board by a vote of four to two denied appellee's claim for special disability retirement.

The lower court upon its review of the record reversed the Board stating, "[t]hat there was no doubt as to the medical causation of appellee's disability." In making its determination the lower court relied on the Court of Appeals decision in *Rollins, supra.* We find this reliance to be misplaced. In *Rollins,* the Court of Appeals found that "there was no real dispute as to the essential facts, and no unequivocal evidence on the question of causation. . . . There was no basis for the exercise of judgment or discretion by the Board, and when the Board denied Rollins' claim for special disability benefits, its conclusion [was] unsupported by the evidence. . . ." 269 Md. 722, at 732-33.

In this case there was evidence which, if believed, could have been interpreted as indicating that appellee's disability was *not* causally connected to the accident of 1977.

In its opinion the Board stated:

> "Specifically, *we find the claimant not disabled as a result of the subjective symptoms of his shoulder, nor as a result of his obesity or hypertension.* We accept Dr. Vollmer's testimony and the Board's conclusion of *'maximal nonphysiologic loss of function.'* We are also mindful of the precise periodicity with which the claimant lost time from work *after* the rejection of his first application and *prior* to his reexamination by the Medical Board. . . . *We conclude that the Medical Board adopted the view,*

*in accordance with their policy, that personnel who consistently miss time from work cannot perform their duties and are thereby incapacitated irrespective of the reason (if any) why the employee missed time."* (Emphasis added.)

Notwithstanding the evidence from which the Board could have found appellee's disability the fruit of something other than the 1977 accident, the Board made conclusions contrary to the evidence adduced at the hearing.

The Board in concluding "that the Medical Board adopted the view . . . that personnel who consistently miss time from work cannot perform their duties and are thereby incapacitated irrespective of the reason (if any) . . .", reached a conclusion not supported by any evidence. In effect, the Board's conclusion is a statement that appellee was *not* disabled, but that appellee was being retired due to time missed from work.

We point out that the determination of whether appellee was disabled is a function within the province of the medical board, not the Board of Trustees. Here, the Board invaded the bailiwick of the medical board, which proved to be its Achilles' heel. As stated above, the function of the Board is to determine whether appellee's disability was causally connected to the 1977 accident.

The trial court in reversing the Board arrived at the correct conclusion, but for the wrong reason; therefore, we shall affirm the decision of the lower court.[3]

> *Judgment affirmed.*
> *Costs to be paid by appellant.*

*Gilbert, C. J., dissenting:*

I respectfully disagree with my brethren. I take no issue with their discussion of the facts, their conclusion that the trial judge was wrong, or that the Board of Trustees con-

---

3. Motion to amend appellants' statement of printing costs is granted. *See* Klopfer v. Werber, 264 Md. 419 (1972).

sidered evidence dehors the record while rejecting, if not ignoring, substantial evidence that would have supported the Board's ultimate conclusion.

The record discloses evidence from which the Board could have decided that the appellee's "special disability" was not causally connected to the injury sustained. Moreover, the Board could have concluded that the appellee's pattern of absenteeism strained credibility.

Admittedly, the Board journeyed outside the evidence and blatantly decided the case on what was not properly before it.

The "Medical Record Card" of the appellee shows that from August 12, 1974 through September 20, 1978, a period of four years and one month, the appellee reported sick on ten separate occasions. He lost a total of 20 days work. On October 18, 1978, he sustained an "arm injury" and lost three days work.

Appellee's initial request for "Special Disability Retirement" was rejected, and he was so notified on March 12, 1979. Thereafter, appellee, with almost mathematical precision, reported sick 11 times during the period April 10, 1979 through August 27, 1979. In the April 10, 1979 to June 12, 1979 time frame, all complaints were directed toward appellee's "sore shoulder." As a result of the "sore shoulder" he lost about two days work per week.

It is obvious that the majority believe, as do I, that the Board had before it evidence sufficient to reverse the medical board. Notwithstanding that evidence, the Board considered and based its decision on matters not before it. The Board was wrong for so doing, and the trial court should have so held and remanded the case to the Board in order for that administrative body to reconsider the case and decide it on the basis of the evidence before it. It seems to me that if the trial judge can be affirmed even though he has reached what they think to be the right decision, but for the wrong reason, that same privilege should be extended to the Board who, in my opinion, were right, but for the wrong reasons.

I would reverse and remand with instructions to the trial court to remand the case to the Board for reconsideration of the evidence that was properly before it.