587 A.2d 1155

**Randy L. HILL**

v.

**BALTIMORE COUNTY, MARYLAND.**

**No. 822, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

April 2, 1991.

644

Benjamin Lipsitz, Baltimore, for appellant.

Michael J. McMahon, Towson, for appellee.

Argued before ALPERT, ROSALYN B. BELL and FISCHER, JJ.

ROSALYN B. BELL, Judge.

The County Code for Baltimore County establishes a statutory scheme governing the retirement of public employees. The interpretation of that scheme is the focus of this appeal.

Randy L. Hill was injured in the "line of duty" and sought disability retirement through the County Employees retirement and pension system. The administrative agencies of the county rejected his claim. He appealed to the Circuit Court for Baltimore County, which affirmed the agency's decision. Hill noted a timely appeal to this Court.

Five issues are raised by this appeal:

—Whether the County Board of Appeals erred in making a finding that Hill was not totally disabled because the County Code exclusively reserves to the Medical Board the issue of disability.

—Whether the administrative procedures utilized in this case violated due process and equal protection.

—Whether Hill was entitled to disability benefits.

—Whether the County Board of Appeals should have excluded certain opinion testimony about Hill's incapacity because the opinion failed to consider reports of a particular doctor who treated Hill.

—Whether the trial court erred in declining to apply a de novo standard of review in deciding Hill's appeal from the decision of the Board of Appeals.

We conclude that Hill has misinterpreted the statutory scheme. For that and other reasons set out below, we will affirm.

## BACKGROUND

Hill sustained a "line of duty" injury to his right arm in 1985 when he fell from the back of a truck while employed at the Baltimore County Department of Recreation and

Parks as a maintenance worker. He tore tendons in his right arm, requiring surgical repair and rehabilitation. After returning to work for the County, Hill complained of an inability to perform his job and sought reassignment to light or desk-type work. No desk position was available, however. Until Hill stopped work altogether, he missed most of the working days available.

Eventually, Hill sought disability retirement through the County Employees retirement and pension system. To initiate the process, Hill filed an "Employee's Statement of Disability" with the Board of Trustees of the Employees' Retirement System of Baltimore County (Trustees). The Trustees, in compliance with the County Code, referred the case to the County Medical Board (Medical Board) for its determination of whether Hill was sufficiently injured to warrant retirement. The Medical Board concluded Hill was not totally disabled. Based on this information, the Trustees determined that he was not entitled to disability retirement benefits.

Hill appealed to the Board of Appeals of Baltimore County (Board of Appeals). That Board, after notice and an opportunity to be heard, affirmed the Trustees' decision. Hill appealed to the Circuit Court for Baltimore County which also affirmed the decision.

## STATUTORY SCHEME

Before we examine appellant's contentions, we need to explain the statutory scheme. The Baltimore County Charter and Code establish a two-step administrative process to secure retirement based on disability. The first step consists of the administrative-investigative procedures. The second step consists of the administrative-appellate process before the County Board of Appeals. We will discuss each in turn.

### —Administrative–Investigative Procedure—

Title 20 of the Baltimore County Code specifies the process to be followed to secure retirement benefits. Section

20-1 authorizes the County to establish and maintain a pension/retirement system for its employees. It authorizes the County to establish terms for admission into the system and different classifications for such admission. In accord with § 20-1, two classifications for disability benefits are established: § 20-20, *Ordinary disability retirement benefit,* and § 20-22, *Accidental disability benefit.* The distinction that exists between these two classes gives rise to appellant's equal protection argument and will be discussed fully later.

Section 20-34 establishes the composition, term and election of the Board of Trustees. Section 20-44 provides that the Board of Trustees establish a Medical Board to "participate in the retirement system." The Medical Board is required to arrange and "pass upon" all examinations required under the article. § 20-44. Moreover, the Medical Board is required to report to the Board of Trustees its "conclusions and recommendations" on all matters referred to it. The determination of whether an applicant is disabled is the province of the Medical Board. Determining whether the applicant's disability is work related is the province of the Board of Trustees.

—Administrative–Appellate Process—

Maryland's Constitution, Art. XI–A, § 2 requires the General Assembly to provide a grant of express powers to counties that form a charter under the auspices of the Article. The General Assembly provided this express grant in Art. 25A, § 5 (1957, 1990 Repl.Vol.), in the Maryland Code, known as the Express Powers Act. *Anne Arundel County v. Bowen,* 258 Md. 713, 715, 267 A.2d 168 (1970). Subsection 5(U) of the Act authorizes "Chartered Counties" to enact local laws allowing for the creating of a County board of appeals. The subsection also provides for the Board's composition, rules of procedure, and "decision by the board on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board...." As the Court of Appeals

recognized in *Hope v. Baltimore County*, 288 Md. 656, 657–59, 421 A.2d 576 (1980), this enactment, along with provisions in the Baltimore County Charter, effectively changed the way administrative appeals occur in Baltimore County.

In accord with these constitutional and statutory provisions, Baltimore County established its Board of Appeals. After enumerating several specific areas of appeal not applicable here, § 602(d) of the County Charter expressly provides that the Board of Appeals must "hear and decide appeals from all other administrative and adjudicatory orders. . . ." Importantly, § 603, the practice and procedure section, mandates that the decisions of the Board of Appeals can be made only after "notice and opportunity for a de novo hearing." Finally, § 604 provides a right of appeal to the Baltimore County Circuit Court for any party "aggrieved" by the Board of Appeals decision.

Thus, the normal course of procedure in an application for disability retirement benefits requires the Medical Board to first determine whether the applicant is disabled. The Board of Trustees then determines whether the disability is work related. If the decision of either Board is adverse to the applicant, he or she may receive a de novo hearing before the Board of Appeals. If that decision is adverse, the applicant may appeal to the circuit court.

## THE ADMINISTRATIVE PROCEDURE

Appellant challenges the administrative procedure leading to the adverse decision on his claim for disability retirement and the constitutionality of the statutory scheme. First, appellant alleges that the Board of Appeals must limit its function to determining the nature of Hill's disability, *i.e.,* whether it was ordinary or accidental. He argues that the Board of Appeals erred in determining the existence or extent of his disability. Second, appellant argues that, although he was afforded a hearing before the Board of Appeals, he was given neither notice of a hearing nor an

opportunity to be heard before the Medical Board or the Board of Trustees. This, he contends, was a denial of due process of law. Third, appellant argues that failure to require a medical examination for accidental disability retirement benefits violates equal protection when such an examination is required for ordinary disability retirement benefits.

—Statutory Misinterpretation—

■ Appellant contends that the Board of Appeals usurped a function of the Medical Board when it decided the issue of disability instead of limiting itself to the nature, ordinary or accidental, of appellant's disability. Appellant relies on *Board of Trustees of the Fire and Police Employees Retirement System of the City of Baltimore v. Ches,* 294 Md. 668, 452 A.2d 422 (1982). In *Ches,* the Court of Appeals reiterated the conclusion of the Court of Special Appeals in *Board of Trustees of the Fire and Police Employees Retirement System of the City of Baltimore v. Ches,* 50 Md.App. 200, 207, 436 A.2d 1131 (1981), that

> "[t]he determination of whether appellee was disabled is a function within the province of the medical board, not the Board of Trustees. Here, the Board invaded the bailiwick of the medical board, which proved to be its Achilles' heel."

The Court of Appeals agreed that the two boards served separate functions:[1]

> "This Court has repeatedly stated that in cases arising under then Baltimore City Code, Art. 22, § 34(e), it is the

---

1. While the Court of Appeals acknowledged the different roles of these bodies, contrary to what appellant seems to imply in his brief, the Court did not add "its own support to [the] proposition" that the Board of Trustees "invaded the bailiwick of the medical board...." In *Ches,* the Court of Appeals makes it clear it believed the Board of Trustees decision "was *unsupported by the record* and was, therefore, arbitrary." *Ches,* 294 Md. at 679, 452 A.2d 422 (emphasis added). The Court indicated that it was not following the conclusion of our Court that the Board of Trustees had usurped the Medical Board's role. *Ches,* 294 Md. at 676–80, 452 A.2d 422.

function of the Medical Board to determine that an applicant is physically disabled, that his disability is likely to be permanent, and that he ought to be retired. After those decisions have been made by the Medical Board, the only issue to be determined by the Board of Trustees is whether the applicant's disability was the natural and proximate result of 'an injury arising out of and in the course of the actual performance of duty, without willful negligence on his part.' "

*Ches,* 294 Md. at 677, 452 A.2d 422 (citations omitted). On the basis of this language, appellant contends that the Board of Appeals cannot reverse the decision of the Medical Board.

Appellant's reliance on *Ches* is misplaced. As stated earlier, the statutory scheme provides a two-step process. *Ches* refers only to the first half of the process, the investigative, code-created proceedings. *Cf. Ches,* 294 Md. at 678–80, 452 A.2d 422. In the first half of the process, the administrative bodies, here, the Board of Trustees and the Medical Board, have distinct, reserved statutory roles relative to each other. *Ches,* 294 Md. at 677–78, 452 A.2d 422. The Medical Board determines the applicant's disability, if any, while the Board of Trustees determines whether the applicant's disability was causally related to a work accident. Baltimore County Code § 20–22. *Ches* applies solely to the first half of the process and has no relationship to the function of the Board of Appeals. The second half of the process deals with the administrative-appellate procedure, and due process requirements under the Charter; these halves are distinct. Sections 602 and 603 of the Charter provide for a *de novo* hearing and the ability to "decide" all the issues before the Board of Appeals. The Charter does not limit how the Board of Appeals may decide the issues. Thus, the Board of Appeals may fully decide the case and even reverse without remand.

When confronted with two proposed interpretations—one rendering legislation valid and the other invalid—courts generally attempt to read the enactment in a manner to

render it valid. *City of College Park v. Cotter*, 309 Md. 573, 589, 525 A.2d 1059 (1987). To interpret the provisions of the Code and Charter to mean that the Board of Appeals could not decide all the issues would render these provisions violative of due process. The Board of Appeals is the first administrative level at which appellant receives full notice and an opportunity to be heard. If the Board of Appeals was required to remand as appellant asserts *Ches* and the Code require, the Medical Board and the Board of Trustees would be the ultimate or dispositive decision maker. Because an applicant does not have the opportunity to participate at these levels, due process would be violated. We conclude that the Board of Appeals may decide all the issues before it and that *Ches* does not *require* a remand to the Medical Board.[2]

We next examine appellant's due process argument to ensure the administrative process utilized here comported with constitutional requirements.

### —Due Process—

■ The Medical Board determined that there was insufficient medical evidence to conclude appellant was totally disabled. Based on this, the Board of Trustees denied appellant's request for accidental disability retirement. Ap-

---

**2.** A comment by the Chair of the Board of Appeals indicates that they also were confused about their role as it related to the first step of the process. The Chair said:

"[I]n line with the Chess [sic] decision and the section of the code, if, in fact, we make a determination that he is disabled, Chess [sic] seems to require us to remand this to the Board of Trustees for, at that time, to make a decision as to whether or not this disability is a result of an in line of duty or ordinary disability."

This and other remarks made at the Board of Appeals hearing indicate it erroneously believed it could not decide all the factual issues. It did, however, in fact, consider the evidence de novo. The Board of Appeals indicated in its opinion that it considered the testimony *produced before it* as well as the voluminous medical reports *filed with it*. Moreover, it noted that it had the "opportunity to observe the demeanor of the witnesses." These statements are clear indications that the Board of Appeals did reach the medical issues in making its decision to affirm.

pellant divides his due process argument into two parts: (1) that he was denied due process because the Medical Board and Board of Trustees made the ultimate determination, therefore, he was entitled to notice and a hearing at those levels; and (2) that he was denied due process simply because he had no input into the process at each stage. Because we have already held that the Board of Appeals makes the ultimate decision on a case appealed to them, we need only deal with the second part of appellant's argument.

We agree with appellant that he is entitled to notice and the opportunity to be heard at some stage in the administrative process. As we noted in *Maryland–National Capital Park & Planning Commission v. Friendship Heights*, 57 Md.App. 69, 82, 468 A.2d 1353 (1984), the general rule is:

> "Where an administrative body is resolving disputed questions of adjudicative facts concerning particular parties, it is engaged in a quasi-judicial function which requires a hearing."

We part company with appellant, however, on when and how often such a hearing is required in order to comport with the requirements of due process.

Admittedly, appellant had no notice or hearing before the Medical Board or Board of Trustees.[3] He cites no specific case law, however, to support his contention that due process requires notice and a hearing at these initial stages or at all stages where the *final* administrative determination is made at a de novo hearing.

In *Quesenberry v. Washington Suburban Sanitary Commission*, 311 Md. 417, 419, 535 A.2d 481 (1988), suit was brought to obtain accidental disability under a retirement plan. The Court of Appeals concluded that the admin-

---

**3.** We cannot help but note that this actually serves to help an applicant. If the Medical Board finds him or her qualified and the Board of Trustees finds him or her eligible, the applicant may be awarded a pension without the need to do anything further. If unsuccessful at either of these earlier stages, the applicant can then proceed. This process is more economical for applicants and government alike.

istrative process had not been completed because no decision regarding the claim had been made and that additional review was required. In reaching this conclusion, the Court of Appeals stated:

> "We do not suggest that each official considering the claim or appeal must afford Appellant a hearing. We note, however, that when an agency performs an adjudicative function involving property rights of this nature, the right to a hearing *at some stage* of the process may be required to accommodate the constitutional requirement of due process."

*Quesenberry,* 311 Md. at 425, 535 A.2d 481 (footnote omitted) (emphasis added).

The United States Supreme Court was more explicit in its statement of the rule. In concluding that proceedings before the Administrator of the Wage and Hour Division of the Department of Labor met the requirements of due process, the Supreme Court stated:

> "The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective."

*Opp Cotton Mills v. Administrator of the Wage and Hour Division of the Department of Labor,* 312 U.S. 126, 152–53, 61 S.Ct. 524, 536, 85 L.Ed. 624 (1941).

Academicians have reached a similar conclusion. In his administrative law treatise chapter on trial-type hearings, Professor Davis states, as the "main principle," that an individual "whose interest is protected by due process is entitled to opportunity for a trial-type hearing on disputed adjudicative facts...." Davis, 2 *Administrative Law Treatise* § 12:1, at 406 (2d ed. 1979). Professor Davis enumerates several exceptions to this rule. One applicable here is that no trial-type hearing is necessary when a de novo administrative or judicial review is available. Davis, *supra* at 406; *see* Cooper, 1 *State Administrative Law,* at 139 (1965).

■ We hold that an individual is provided due process of law even if he or she is not given notice of or a hearing at the initial administrative levels when he or she is afforded a de novo hearing at the County Board of Appeals. Appellant received notice of the hearing, appeared with counsel, presented evidence, cross-examined witnesses and had a complete record that formed the basis of the Board of Appeals decision. Under its de novo review, the Board of Appeals could have decided the case completely. Here, it decided to affirm the decisions of the Medical Board and the Board of Trustees. Furthermore, we noted in *Boehm v. Anne Arundel County,* 54 Md.App. 497, 511, 459 A.2d 590, *cert. denied,* 297 Md. 108 (1983), that a de novo hearing is for all intents and purposes the first hearing of the case and cures any error existing in earlier administrative decisions.

—Equal Protection—

■ Appellant's second constitutional argument is that the failure of the Medical Board to provide him a medical examination violated his right to equal protection of the law. This is also an attack on the first step of the two-step process. As mentioned earlier, two classifications are set out in the Code. Section 20–20 entitled *Ordinary disability retirement benefit* requires that the Medical Board "pass upon" a medical examination before determining whether an employee is incapacitated. Section 20–22 entitled *Accidental disability benefit* does not require a medical examination before determining whether an employee is incapacitated.

In his application for disability retirement benefits, appellant was not required to state whether he sought accidental or ordinary disability benefits.[4] His application was treated

---

4. At the de novo hearing before the Board of Appeals, argument occurred over whether appellant or the Board of Trustees was required to set out whether the disability was accidental or ordinary. As the Board of Appeals noted, it is "probably in the employee's interests" not to have to choose because this leaves either type available depending on the administrative body's decision.

as one for accidental disability benefits, under Baltimore County Code, § 20–22 (1978). Therefore, a medical examination was not conducted as a prerequisite to the Medical Board's decision.

Appellant argues that no reasonable basis exists for the distinction which affords ordinary disability retirement applicants an examination by the Medical Board but does not require a similar examination of accidental disability retirement applicants. Appellant asserts that the distinction is arbitrary and discriminatory, and amounts to a denial of equal protection because it does not afford a similar examination to both classes.[5] We are not persuaded by appellant's contention.

The equal protection clause of the Constitution does not preclude a municipality from resorting to legislative classifications provided the classifications rest on a distinction which bears a rational relationship to a legitimate State interest. *See Abbott v. Administrative Hearing Board, Prince George's County,* 33 Md.App. 681, 688, 366 A.2d 756 (1976), *cert. denied,* 280 Md. 727 (1977); *see also Bowie Inn, Inc. v. City of Bowie,* 274 Md. 230, 241, 335 A.2d 679 (1975). This is the "usual standard of judicial review" and is applicable when fundamental rights or a suspect class are not involved. *See Board of Supervisors of Elections of Prince George's County v. Goodsell,* 284 Md. 279, 286, 396 A.2d 1033 (1979).

Under this "rational basis test," if any state of facts can reasonably be conceived to sustain the classification, they will be presumed to have existed at the time the law was enacted. *Goodsell,* 284 Md. at 286, 396 A.2d 1033. A reasonable state of facts for the distinction does exist.

---

5. We are not at all certain that, as appellant alleges, § 20–20 requires the Medical Board to conduct the examination. In fact, such a position seems contraindicated in § 20–44, which provides that "[t]he Medical Board shall *arrange for and pass upon* all medical examinations...." (Emphasis added.) Simply put, if the intent were for the Medical Board to conduct these examinations, the emphasized language would be replaced with the word "perform."

Applicants for ordinary disability retirement under § 20–20 have not suffered an "in line of duty trauma." Thus, applicants for ordinary disability retirement may not have been subjected to the thorough medical diagnosis that generally follows an accidental injury. In this case, Hill did receive a medical examination at the time of the accidental injury through the Baltimore Employees' Health Services which referred him to a Dr. Becker. Dr. Becker and a Dr. Reichmister, of his office, saw Hill several times as he continued to be monitored by the employees' health services over a substantial period of time.

A medical examination would be required to certify that ordinary disability retirement applicants lack the capacity to perform their duties. Unlike the employee who seeks accidental disability, ordinary disability retirement applicants have not received a diagnosis of, or scrutiny for, an "in line of duty" accident. As a consequence, the examination required in § 20–20 may be necessary to decide the question of the incapacity of ordinary disability applicants, but not of accidental disability applicants. The Code does not preclude a medical examination of accidental disability applicants, however, if the Medical Board deems one advisable. In light of this, we cannot say there is *no* reasonable basis for the distinction or that the equal protection clause is violated.

## EVIDENCE

Appellant raises two issues based on evidentiary matters: (1) whether the Board of Appeals should have excluded certain opinion testimony about appellant's incapacity and (2) whether the record established that Hill was entitled to disability benefits.

### —Opinion Testimony—

Dr. Barbara McLean testified that, pursuant to her examination, knowledge of appellant's position of employment, and the findings and conclusion of Dr. John Fahey's examination, in her opinion, appellant suffered no perma-

nent disability. In his report, Dr. Fahey concluded that appellant had a "very excellent repair of his torn triceps, that he had a full range of motion of the elbow with a little limitation of internal rotation of the right shoulder." Dr. Reichmister found to the contrary, namely a 20 percent permanent disability. Appellant contends that it was error to receive Dr. McLean's opinion because it failed to consider Dr. Reichmister's reports.

■■■■ An expert witness may base his or her opinion, not only on personal observations, but on facts and even the opinions contained in reports or examinations made by third parties. Moreover, an expert witness may give greater credence to one physician's conclusions than another's. *See* McLain, *Maryland Evidence* § 703.1 at 237–39 & nn. 6–10. As Professor McLain has noted, while case law intimates that

> "the piggybacking of the witness' opinion on another's inference or conclusion is precluded ... [a] close analysis of the cases shows that the courts have required merely that the basis for expert opinion be sufficiently trustworthy to be reliable and that the opinion have probative value of its own.

> "Experts' use of hearsay information has been held proper most often with regard to valuation of real estate and *diagnosis and prognosis of personal injuries*."

McLain, *supra*, § 703.1 at 239 (footnotes omitted) (emphasis added). Certainly, Dr. McLean's opinion had probative value. Furthermore, after reviewing the record, we cannot say the basis of her opinion was not "sufficiently trustworthy to be reliable." Dr. McLean utilized her own examinations as well as the findings and conclusions of other medical professionals, a common practice in the medical community.

■■■■ Moreover, administrative agencies are not bound by the technical, common-law rules of evidence. *Commission on Medical Discipline of the State of Maryland v. Stillman,* 291 Md. 390, 422, 435 A.2d 747 (1981). The evidence

must, however, be competent. *Department of Public Safety and Correctional Services v. Scruggs*, 79 Md.App. 312, 322, 556 A.2d 736 (1989). In reviewing the record, we cannot say that Dr. McLean's testimony was incompetent simply because it did not agree with Dr. Reichmister's reports.

### —Record Evidence as to Disability—

Appellant next argues that the record clearly shows that he lacks the capacity to perform his duties as a maintenance worker in the County's Department of Recreation and Parks.

 When reviewing the decisions of an administrative agency, we must determine whether they are supported by substantial evidence. In this regard, our duty is to determine " 'whether a reasoning mind reasonably could have reached the factual conclusion that the agency reached.' " *St. Leonard Shores Joint Venture v. Supervisor of Assessments of Calvert County*, 307 Md. 441, 447, 514 A.2d 1215 (1986) (citations omitted). In applying this standard, we are mindful that we must not engage in judicial fact-finding or substitute our judgment for that of the agency. *St. Leonard Shores*, 307 Md. at 447, 514 A.2d 1215.

 Our review of the record convinces us that there was relevant and substantial evidence to support the conclusion of the Board of Appeals that an accidental disability pension was not merited. Rather than summarize this evidence, we will quote the opinion of the Board:

"The Board has carefully considered the testimony solicited at the hearing on this matter and the lengthy and voluminous medical reports submitted by both sides. The Board has had the opportunity to observe the demeanor of the witnesses at the hearing and determine their credibility. This is particularly relevant in this case in view of the past history of Mr. Hill's employment with Baltimore County. As was adduced at the hearing, Mr.

Hill has had frequent run-ins with his supervisors and the medical clinic staff which serves County employees. We do not judge the merits of this dispute, only the issue before us.

"After carefully considering all the evidence before us, we are persuaded that Mr. Hill is not totally disabled within the meaning of the statute. Clearly, the statute provides total and permanent incapacity for duty. We do not feel Mr. Hill has met his burden in this regard. Dr. Reichmister, upon whose reports the employee relies, has determined that only a 20 percent impairment to the right upper extremity exists. Dr. Fahey has opined that the employee can return to work without restriction. A review of the Appellant's Exhibit =5, the description of Mr. Hill's job duties, is particularly relevant. Despite Mr. Hill's claims to the contrary, the medical reports do not substantiate his claim that he cannot perform all of the duties as described in Appellant's Exhibit =5. Frankly, Mr. Hill's testimony that he could not perform many of the simplest tasks which could be accomplished by the use of only one arm is not credible. It is particularly relevant that his injury was to his right arm and Mr. Hill is left-handed."

## DE NOVO STANDARD

■ Appellant acknowledges, as we set out earlier, that a court reviewing an administrative decision ordinarily applies the substantial evidence test. Nonetheless, appellant argues that *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), requires a de novo review of this case and, accordingly, that the trial court erred.

In *Bruch*, 109 S.Ct. at 956, the Supreme Court held, "[c]onsistent with established principles of trust law ... that a denial of benefits challenged under § 1132(a)(1)(B) [of the Employee Retirement Income Security Act of 1974] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary dis-

cretionary authority to determine eligibility for benefits or to construe the terms of the plan." (Emphasis in original.)

Appellant urges that an analogous situation is presented here and that we should set aside the substantial evidence standard of administrative review. We disagree.

First, the Supreme Court makes clear that the *Bruch* decision is limited specifically to the applicable ERISA section. "The discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations." *Bruch*, 109 S.Ct. at 953. Second, as the Supreme Court points out, ERISA law and the *Bruch* decision are inexorably bound to the language and principles of trust law. *Bruch*, 109 S.Ct. at 954. Here, the question is not about trust law and review of trust decisions, but about administrative law and review of administrative decisions.[6] Third and most important, ERISA applied only to private plans and its language expressly precludes its application to any governmental employee benefit plans.[7] 29 U.S.C. §§ 1002(32) & 1003(b)(1) (1988); *see Chausmer v. Commissioners of the Employees' Retirement System of City of Newark*, 150 N.J.Super. 379, 375 A.2d 1205, 1207 (N.J.Super.Ct.App.Div.1977).

Appellant would have us overturn a well-established and logical principle of administrative law on the basis of one *ERISA* decision that is directly tied to a statute that is

---

**6.** Neither will semantics provide a safe haven for this proposition. We do not believe that administration of a trust falls within the ambit of administrative law. Black's defines administrative law as a "Body of law created by administrative agencies in the form of rules, regulations, orders, and decisions." *Black's Law Dictionary* 43 (5th ed. 1979).

**7.** Certain requirements for qualification for both public and private plans have since been adopted. 26 U.S.C.A. § 401 *et seq.* (West Supp.1990). At this time, they are not being enforced on government plans.

inapplicable to governmental retirement plans and based on the law of trusts. We decline to do so.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.