767 A.2d 339

**Steven M. VANDEVANDER, Sr.,**

**v.**

**Richard J. VOORHAAR.**

**No. 2614, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Feb. 23, 2001.

**622**

Lynae Turner and Benjamin R. Wolman, Upper Marlboro, for appellant.

No brief or appearance by appellee's counsel.

Argued before HOLLANDER, THIEME,* and KRAUSER, JJ.

---

* Thieme, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

THIEME, Judge.

Former Sheriff's Deputy Steven M. VanDevander appeals from an order of the Circuit Court for St. Mary's County upholding the findings of an administrative hearing board convened pursuant to Md.Code (1957, 1996 Repl.Vol., 1999 Cum.Supp.), Art. 27 § 730. After a hearing held between September 28 and October 1, 1998, that three-member panel found that Deputy VanDevander had used excessive force during an off-duty security assignment, and had been untruthful in reports and statements regarding the incident. The board issued its report on November 12, 1998. As required by Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 731(c), the Sheriff of St. Mary's County, Richard J. Voorhaar, in a meeting held on January 22, 1999, reviewed the board's written recommendations and increased the board's recommended penalty to discharge.

Deputy VanDevander petitioned for judicial review pursuant to Md. Rule 7–201, *et seq.*, and the circuit court heard oral arguments on July 22, 1999. The court found no problems with the findings and procedure used by the administrative hearing board. It did find, however, that the Sheriff failed to satisfy the procedural requirements set forth in the Law Enforcement Officers' Bill of Rights ("LEOBR"), Md.Code (1957, 1996 Repl.Vol., 1999 Cum.Supp.), Art. 27 § 727, *et seq.*, for achieving finality, and it remanded the matter to Sheriff Voorhaar for further proceedings on September 30.

Sheriff Voorhaar reconsidered the matter on December 6, and he reiterated his decision from the earlier proceeding. The circuit court issued its Final Order on December 23, 1999, from which Deputy VanDevander appeals and asks the following questions, which we have reordered and restated:

1. Did the court below err when it failed to reverse appellee's decision to increase the penalty recommended by the hearing board?

2. Did the court below err when it affirmed the administrative hearing board's finding that appellant was guilty of excessive force?

3. Did the court below err when it affirmed the hearing board's finding that appellant was guilty of untruthful statements?

4. Did the court below err when it failed to find that appellant was denied due process and equal protection?

To the first three questions, we answer "yes"; [1] we need not reach the fourth question. We reverse the judgment of the court below.

## Facts

Deputy VanDevander has been an officer with the St. Mary's County Sheriff's Department for about eight years. On December 6, 1997, he was working in an approved part-time assignment at Perkins' Restaurant. Although he wore civilian clothes, the deputy carried with him authorized law enforcement equipment, including pepper spray. The need for police intervention arose when a patron, Kevin Wood, the complainant in this action, whom witnesses described as loud, disruptive, and quite intoxicated, refused to leave the restaurant, despite several requests to do so. Deputy VanDevander identified himself to Wood as a law enforcement officer. He first asked Wood to leave, and he did, but later Wood returned. Deputy VanDevander asked Wood to leave again, and this time he refused. The deputy then tried to remove Wood from the restaurant. Witnesses observed Wood kicking Deputy VanDevander and the citizen who assisted him. In order to effectuate lawful arrest of the now-violent patron, Deputy VanDevander used pepper spray.

Internal affairs charges were filed pursuant to Article 27, section 730, and included the following:

1. *Truthfulness:* All verbal and written reports submitted by employees of the Sheriff's Office will be truthful; no employee shall knowingly report or cause to be reported any false information. A clear distinction must be made

---

1. We note with interest that appellee neither submitted any brief nor sent counsel to oral arguments before this Court.

between reports which contain false information and those which contain inaccurate or improper information. To prove by a preponderance of the evidence that one has submitted a false report, evidence must be presented for consideration that such report is designedly untrue, deceitful, or made with the intent to deceive the person to whom it was directed.

2. *Use of Force:* It is the policy of the St. Mary's Sheriff's Office that Deputy Sheriff and Corrections Officer employees, shall, in every instance, use only the minimum force needed to accomplish their mission, and shall exhaust every other reasonable means of apprehension or defense before using firearms. Further, it is Sheriff's Office policy the Deputy Sheriff and Corrections officer employees must reasonably anticipate a situation justifying the use of a weapon before removing it from its holster or otherwise displaying it. The use and display of weapons in circumstances other than those described here is contrary to the Sheriff's Office policy.

3. *Unbecoming Conduct:* Employees shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorable [*sic* ] on the Department. Conduct unbecoming an employee as a member of the Department, or that which impairs the operation or efficiency of the Department or employee.

4. *Withholding Evidence:* Members shall not fabricate, withhold or destroy evidence of any kind.

5. *Prisoner Safety:* Officers charged with the custody of prisoners observe all laws and Department orders in connection with this activity. Prisoners are kept securely, treated in a humane manner, and are not subjected to unnecessary restraint or force. Profane or abusive language directed at prisoners is prohibited. The arresting officer is responsible for the custody of his prisoner until custody is assumed by other competent authority. This responsibility includes the prevention of acts by any other member of the Department

which violate the law or Department regulations. Any Department employee, including the arresting officer, who has knowledge of any violations of this provision immediately reports his knowledge to his section or station commander.

The administrative hearing board found Deputy VanDevander guilty of the first and second charges, and it recommended a five-day suspension for excessive force and a one-year reduction in rating for untruthfulness. Sheriff Voorhaar increased the penalty so as to discharge the deputy from employment. After the circuit court issued a final order, Deputy VanDevander noted a timely appeal.

### Discussion

Our standard of review for decisions of administrative panels is precisely that of the circuit court. *Maryland Dep't of Educ. v. Shoop,* 119 Md.App. 181, 196, 704 A.2d 499 (citing *Dept. of Human Resources v. Thompson,* 103 Md.App. 175, 188, 652 A.2d 1183 (1995)), *cert. denied,* 349 Md. 495, 709 A.2d 140 (1998). We review appeals from such panels under a two-tiered scheme. We examine the panel's findings of fact under the substantial evidence test. *Department of Health & Mental Hygiene v. Reeders Mem. Home, Inc.,* 86 Md.App. 447, 452, 586 A.2d 1295 (1991). We cannot, however, substitute our judgment for that of the administrative panel. *Zeitschel v. Board of Educ.,* 274 Md. 69, 82, 332 A.2d 906 (1975). As for our review of the findings of law, when no such deference is appropriate, we may substitute our judgment for that of the administrative panel. *Shanty Town Assoc. v. Department of the Environment,* 92 Md.App. 103, 116, 607 A.2d 66 (1992); *see also Younkers v. Prince George's County,* 333 Md. 14, 19, 633 A.2d 861 (1993) (citing *People's Counsel v. Maryland Marine Mfg. Co.,* 316 Md. 491, 496–97, 560 A.2d 32 (1989)). So broad are our powers of review that the Maryland Administrative Procedures Act, Md.Code (1984, 1999 Repl. Vol., 1999 Cum.Supp.), § 10–201, *et seq.,* of the State Government Article, gives us authority to:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

    (i) is unconstitutional;

    (ii) exceeds the statutory authority or jurisdiction of the final decision maker;

    (iii) results from an unlawful procedure;

    (iv) is affected by any other error of law;

    (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

    (vi) is arbitrary or capricious.

Md.Code (1984, 1999 Repl.Vol.), § 10–222(h) of the State Government Article.[2] Thus, we may reverse a decision in order to correct errors of fact or law, those errors caused by arbitrary or capricious actions of the hearing board, and those errors arising when the board denies the defendant constitutional protections. We do so here.

I

The court below erred when it failed to reverse Sheriff Voorhaar's decision increasing the penalty recommended by the hearing board, because he acted outside of the constraints of the LEOBR, Maryland's controlling statute for the discipline of law enforcement personnel. The LEOBR, at Article 27, section 731(c), sets specific standards with which police chiefs and sheriffs must comply if they seek to increase in severity a penalty recommended by an administrative hearing board:

The written recommendations as to punishment are not binding upon the chief. *Within 30 days of receipt of the hearing board's recommendations, the chief shall review the findings, conclusions, and recommendations of the hearing*

---

**2.** Our power to grant relief under section 10–222 of the State Government Article mirrors that of the circuit court. *See Shoop,* 119 Md.App. at 196, 704 A.2d 499.

*board* and then the chief shall issue a final order. The chief's final order and decision is binding and may be appealed in accordance with this subtitle. *Before the chief may increase the recommended penalty of the hearing board,* the chief personally shall:

(1) *Review the entire record* of the hearing board proceedings;

(2) Meet with the law enforcement officer and permit the law enforcement officer to be heard on the record;

(3) *Disclose and provide to the officer in writing at least 10 days prior to the meeting any oral or written communication not included in the hearing board record* on which the decision to consider increasing the penalty is based, in whole or in part; and

(4) *State on the record* the substantial evidence relied on to support the increase of the recommended penalty.

§ 731(c) (emphasis added). The procedure outlined in the LEOBR for the increase of penalties is mandatory, not voluntary. *See Hird v. City of Salisbury,* 121 Md.App. 496, 504, 710 A.2d 352 (1998) ("Until Chief Dykes satisfied every precondition for increasing the hearing board's recommended penalty for Officer Hird, including meeting with her and giving her the opportunity to be heard on the record, *his action in increasing the penalty was not validly taken and could not be final.*") (emphasis added).

From the record, it is clear that appellee essentially ignored these procedural requirements as he enhanced the hearing board's recommended penalty, yet the court below found error for only the third requirement, disclosure of communications upon which his decision had been based. *See* § 731(c). As *Hird* requires, the court remanded this action to give Sheriff Voorhaar opportunity to cure the shortcoming, and he in turn held a second meeting and issued a final, identical ruling that the court upheld.

The court, however, seemed to overlook other procedural errors, including appellee's failure to review the hearing board's findings in timely fashion, within the thirty-day win-

dow prescribed by statute. The hearing board's report came forth on November 12, 1998. Sheriff Voorhaar's first hearing on that report was scheduled for December 22—ten days, we note, past the statutory deadline—and, after a last-minute cancellation, it was further delayed until January 22, 1999. Sheriff Voorhaar neither asked Deputy VanDevander to concur in postponing the mandated meeting nor requested that he waive the time limits set forth in section 731(c). Indeed, Deputy VanDevander duly noted an objection at the meeting held on January 22, stating that the time for increasing penalties had already passed.

Likewise, Sheriff Voorhaar by his own admission failed to review the entire record from the hearing board proceedings. *See* § 731(c)(1). Indeed, in a memorandum of December 14, 1998, he stated: "On November 23, 1998, I reviewed the Hearing Board Report issued in the subject administrative case. I have reviewed the findings, conclusions, and recommendations of the Hearing Board." Describing his pre-meeting preparation, appellee also stated in correspondence dated January 25, 1999: "I reviewed Deputy First Class VanDevander's Sheriff's Office personnel file. I have also reviewed a sufficient amount of the taped and transcribed Hearing Board record."

Further, as the court below did find, Sheriff Voorhaar failed to "[d]isclose and provide to [Deputy VanDevander] in writing at least ten days prior to the meeting any oral or written communication not included in the hearing board record on which the decision to consider increasing the penalty is based." § 731(c)(3). Beyond his actual failure to notify Deputy VanDevander ten or more days before the meeting took place, Sheriff Voorhaar stonewalled his way through counsel's attempts to place notice of that failure in the meeting record:

[APPELLANT'S COUNSEL]: I do need to ask you if you could at least tell us for the record who you have discussed the Board's recommendation with after it came to you through Lt. Dennis, the Board Chair. . . .

[APPELLANT'S COUNSEL]: Okay. I would like and would appreciate if you could just outline for us briefly with whom you've discussed the Board's recommendation once it got to you.

SHERIFF: Again, [Appellant's Counsel], we're not here for that. We're here for you to tell me about this officer.

[APPELLANT'S COUNSEL]: Well, Sheriff, the problem I have is that I know your second in command, Capt. Raley, has discussed the matter with you. I know that. And I think that needs to be acknowledged.

[APPELLEE'S COUNSEL]: I don't think that's—I think the Sheriff is making a point here that none of that really is relevant to this particular hearing. The purpose of the hearing is to hear from you as to why the penalty shouldn't be raised.

[APPELLANT'S COUNSEL]: Well, the request that I make, as [appellee's counsel] knows, is consistent with the statutory guidelines that we're required to follow, and I believe the Department is required to follow.

SHERIFF: The point is taken.

[APPELLANT'S COUNSEL]: I assume you decline.

SHERIFF: That's correct.

Additionally, Sheriff Voorhaar failed to "[s]tate on the record the substantial evidence relied on to support the increase of the recommended penalty." § 731(c)(4). The Sheriff did assert his reliance on the administrative hearing board's finding of guilt, but, we note, because such finding lacks the support of substantial evidence and is otherwise contrary to law, *see* II & III *infra,* it can in no way support an enhanced penalty.

The circuit court's finding that Sheriff Voorhaar failed to notify Deputy VanDevander of any communications affecting his ultimate penalty led it to remand this action to the Sheriff's Office for further proceedings intended to cure the fatal defect in the existing order. Such a remand, however, could not have cured defects under the LEOBR that the court below failed to recognize or were otherwise beyond repair. Instead, the passing of time and the Sheriff's failure to place

on the record all information that should have been there closed the window of opportunity for enhancing Deputy Van-Devander's penalty. Even if the hearing board's findings of fact and law had been correct, appellant should suffer, at most, only that penalty suggested by the board. Sheriff Voorhaar's penalty enhancements were instated outside the clear boundaries of the law and cannot stand.

## II

■ Beyond reinstatement, Deputy VanDevander's actions justify *no* penalty, for the hearing board's finding that he used excessive force was not supported by the evidence under the established standard. Our most recent analysis of the applicable body of law is *Pagotto v. State,* 127 Md.App. 271, 348–56, 732 A.2d 920 (1999), *aff'd,* 361 Md. 528, 762 A.2d 97 (2000). In that case, we reviewed and merged authority from several courts, emphasizing that "the landmark case establishing the standard for measuring claims that an officer used excessive force is *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The standard is that of objective reasonableness under the Fourth Amendment." *Id.* at 349–49, 732 A.2d 920.

■ . In *Graham,* the Supreme Court endorsed parameters that form the basis of the so-called "force continuum," policing guidelines that help officers select the most appropriate level of force for the situation at hand. Stated simply, the situation at hand governs the degree of force used. In turn, reviewing courts, the high Court held, must not employ "the 20/20 vision of hindsight," but instead must allow for the fact that officers "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." 490 U.S. at 396–97, 109 S.Ct. 1865. "The Court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir.1996) (citing *Greenidge v. Ruffin,* 927 F.2d 789, 791–92 (4th Cir.1991)). Factors that might enlighten the court

as to the officer's circumstances at the moment "includ[e] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865.

Here, Deputy VanDevander, a law enforcement officer working in an approved part-time assignment and using departmentally supplied equipment, faced a disruptive and violent suspect, who was also intoxicated, making him all the more dangerous. Even the prosecution admitted before the hearing board that Wood's actions that night warranted arrest:

I do not have a problem, and I don't think the—I think I am speaking for the Sheriff's Department here—that *Mr. Wood presented himself in a position circumstance* [sic] *where he gave probable cause for an arrest for disorderly conduct* and trespass perhaps. *He probably deserved to be arrested that night.*

Several persons testified regarding Wood's drunken and obnoxious conduct, and other patrons and employees of Perkins' Restaurant sought Deputy VanDevander's assistance in getting Wood to leave the premises. Wood left the restaurant once, then returned, and refused to depart again. When diners and staff asked Deputy VanDevander to intervene, he did so properly, clearly identifying his affiliation with the Sheriff's Department by using voice, badge and departmental identification. To effectuate Wood's arrest, Officer VanDevander ultimately had to use force, but in doing so, he followed the "force continuum" undergirded by *Graham* and, indeed, presented during training for deputies in St. Mary's County. First, he tried without success to use voice commands. Next, he tried without success to use soft hand contact to guide the complainant off the premises. Finally, after he perceived that the complainant was becoming violent *and actively resisting arrest,*[3] he dispensed pepper spray, a substance that is non-

---

**3.** The board inferred from the testimony of some witnesses—including persons who had been inebriated partygoers on a "pub crawl" by

**634**

toxic but clearly intended to inflict misery.[4]   He did not use impact equipment or deadly force, although we note that Wood somehow fell to the pavement outside, suffering injuries to the face and eye.

The crux of Wood's complaint lies with Deputy VanDevander's use of pepper spray when he was unable to subdue the complainant for arrest by other means.   The prosecutor argued that the use of mace—a lawful self-defense tool even for civilians—may have been "a legitimate choice," but she asked the board "to review with your experience whether or not that might have been the best option" under the circumstances. By entertaining her question, the hearing board, and later the reviewing court, ignored the law.   The *Graham* standard denies judges and hearing panelists the luxury of armchair analysis: "I should have thought that the Court in *[Tennessee v. ]Garner*[, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ] */Graham* made one thing clear—that those in robes should not strip those in uniform even of the right to self-protection." *Elliott v. Leavitt,* 105 F.3d 174, 178 (4th Cir.1997) (reversing officer's police excessive force conviction in case involving intoxicated and violent complaining witness).   Indeed, as the Court of Appeals so recently stated:

> "The Fourth Amendment inquiry focuses *not on what the most prudent course of action may have been or whether there were other alternatives available,* but instead whether the seizure actually effectuated falls within a range of conduct which is objectively 'reasonable' under the Fourth Amendment.   *Alternative measures* which $^{20}\!/_{20}$ hindsight reveal to be less intrusive (or more prudent), such as waiting

limousine through Southern Maryland that night—that Wood's conduct was not precisely as Deputy VanDevander represented it.   Other witnesses, including restaurant staff, corroborated Deputy VanDevander's account by explaining how Wood had resisted removal from the premises and arrest.

4.   Unfortunately, innocent bystanders also were accidentally doused with pepper spray, because Wood jostled Deputy VanDevander's arm while the deputy tried to subdue him.

for a supervisor or the SWAT team, *are simply not relevant to the reasonableness inquiry."*

*Richardson v. McGriff,* 361 Md. 437, 455, 762 A.2d 48 (2000) (quoting *Schulz v. Long,* 44 F.3d 643, 649 (8th Cir.1995) (emphasis added)).

Hindsight is always clearer than the heat of the moment. We believe the officers on the hearing board, though conscientious, sought to substitute their own judgment in the calm of the hearing room for Deputy VanDevander's judgment while in the midst of lawfully arresting a violent and intoxicated suspect who actively resisted seizure. Although hindsight may reveal flaws in Deputy VanDevander's judgment, the *Garner* standard does not allow those who would judge police conduct to be Monday-morning quarterbacks. Any errors committed by Deputy VanDevander were not so egregious as to create liability on his part. We reverse the judgment of the trial court affirming the hearing board's findings.

### III

Likewise, we hold that the court below erred when it affirmed the hearing board's finding that appellant was guilty of untruthful statements, because that finding was not supported by substantial evidence. For this Court to uphold an administrative hearing board's order, that order must be sustainable on its findings of fact *and* for the reasons stated by the agency. *See Regan v. Board of Chiropractic Examiners,* 120 Md.App. 494, 508–09, 707 A.2d 891 (1998) ("A court may not uphold an agency's order, however, 'unless it is sustainable on the agency's findings and for the reasons stated by the agency.' ") (quoting *United Parcel Service, Inc. v. People's Counsel For Baltimore County,* 336 Md. 569, 577, 650 A.2d 226 (1994) (citations omitted)), *aff'd,* 355 Md. 397, 735 A.2d 991 (1999). Indeed, on appeal we ask " 'whether a reasoning mind reasonably could have reached the factual conclusion that the agency reached.' " *Eberle v. Baltimore County,* 103 Md.App. 160, 166, 652 A.2d 1175 (1995) (quoting

*Hill v. Baltimore County,* 86 Md.App. 642, 659, 587 A.2d 1155 (1991)).

Neither the findings of fact *nor* the reasons stated by the board could sustain the order here. The charge before the board clearly required that the panel find intent to deceive:

A clear distinction must be made between reports which contain false information and those which contain inaccurate or improper information. To prove by preponderance of the evidence that one has submitted a false report, evidence must be presented for consideration that such report is *designedly untrue, deceitful, or made with the intent to deceive the person to whom it was directed.*

Although the board's findings of fact state that "Deputy VanDevander's written account of the incident and witness statements and testimony differed greatly," they identify no evidence that would establish intent to deceive. Indeed, the board made no findings that would tend to show that the deputy's account was anything other than simply inaccurate. The board's stated reasons for the order—found in its "Conclusion of Law"—likewise cannot be sustained. The board asserted that Deputy VanDevander's written account "revealed misstatements," the "most glaring ... [of which] pertains to the actions of Mr. Wood prior to his arrest. VanDevander's assertion of low level aggression and profanity directed at him was inconsistent with the evidence." Yet the board's own findings of fact also state that "a verbal disturbance" took place where Wood and his friends were seated, and that "Wood was uncooperative upon leaving the restaurant ... flailing and kicking as he was escorted out of the building." The findings of facts are thus inconsistent with the board's reasoning for the order. Moreover, we believe that, given the lack of evidence of any intentional deception, reasoning minds more reasonably would have inferred that any inaccuracies in the deputy's retelling of events spring from a lapse in memory or his perception of the event caused by the stress of the moment rather than any attempt to make Wood's behavior seem more egregious, thus justify-

ing his own actions. The board's order could not have been based on substantial evidence and we must reverse it.

## IV

We need not address the fourth question, whether the court below erred when it failed to find that appellant was denied due process and equal protection, because the foregoing analysis provides sufficient justification to reverse the court's final order in this matter. We do so now.

**JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEE.**