811 A.2d 349

Brian SEWELL

v.

Edward T. NORRIS, Commissioner.

No. 1980, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Nov. 26, 2002.

Kimberly A. Alley (Schlachman, Belsky & Weiner, P.A. on the brief), Baltimore, for appellant.

Peter Saar (Thurman W. Zollicoffer, Jr., City Solicitor, William R. Phelan, Jr., Principal Counsel, Maria E. Korman, Asst. Solicitor and Sean Malone on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., RAYMOND G. THIEME, JR. (Ret'd, specially assigned), WILLIAM W. WENNER, (Ret'd, specially assigned), JJ.

MURPHY, Chief Judge.

In the Circuit Court for Baltimore City, Brian Sewell, appellant, an officer in the Baltimore City Police Department (BCPD or Department) charged with departmental violations to be considered by a hearing board, filed a petition in which he requested that the circuit court order that the officers appointed to the hearing board for his case be members of a law enforcement agency other than the BCPD. That request was denied and this appeal followed, in which a single question is presented for our review:

## I. WHETHER THE TRIAL COURT WAS LEGALLY CORRECT IN DENYING APPELLANT'S RE-QUEST FOR A HEARING BOARD COMPRISED OF MEMBERS FROM ANOTHER AGENCY.

For the reasons that follow, we hold that the circuit court erred by denying appellant the relief that he requested. We shall therefore remand for further proceedings before a hearing board comprised of law enforcement officers who are not members of the BCPD.

### Background

Appellant began his employment with the Department on October 7, 1993. On September 6, 2001, he was charged with five departmental violations,[1] all of which arose out of an incident that occurred on September 4, 2000, while he was on patrol in Central District and while officers of the BCPD's Internal Affairs Integrity Unit ("IAIU") were conducting a random undercover sting operation.[2] The IAIU officers placed what appeared to be a package of crack cocaine on a bench in a park located on Presstman Street, made calls to the

---

1. The following charges were filed against appellant: misconduct, intentional false statement and/or misrepresentation, violation of state/federal law, failing to perform, and failing to promote good public relations.

2. The IAIU was created by the Police Commissioner to eliminate "dirty" police officers from the police force. The charges against appellant were among the first to be filed by the IAIU.

BCPD about the package, and waited to observe the officers who responded.

Although the parties dispute what transpired when appellant arrived,[3] he was indicted for perjury and misconduct in office. The criminal charges received extensive publicity, including thirty-three newspaper articles that appeared in the *Baltimore Sun* between October 5, 2000 and September 12, 2001.[1] In addition, a break-in that occurred at the IAIU's office in December of 2000 generated intensive media speculation that this crime was related to appellant's case. On January 24, 2001, the State dismissed all criminal charges against appellant. After the dismissal of appellant's criminal charges, the Commissioner expressed the Department's disappointment with the decision not to prosecute appellant, and an intense political battle ensued between the Mayor and the State's Attorney.[5] In its January 25, 2001 edition, the *Balti-*

---

**3.** Appellant's version is as follows. While on patrol, he heard the communications relating to drug activity in the park, and he responded to that location in his patrol vehicle. He observed a suspect in the park who fit the description of the suspect described in the broadcast. The suspect was kneeling near a bench and appeared to be holding a plastic bag. When he saw appellant, the suspect fled. At this point, appellant exited his vehicle and searched for drugs. When another officer found the drugs, appellant informed that officer that he had observed the suspect flee. Appellant later responded to a burglary call in the area, and he arrested the burglary suspect leaving a building. Because appellant recognized the burglary suspect as the person who fled from the area of the park bench, he charged the suspect, Frederick McCoy ("McCoy"), with burglary and possession with intent to distribute a controlled dangerous substance. The Department claims that appellant "planted" the drugs on McCoy, who was never in the park.

**4.** Prior to the filing of charges against appellant, the Mayor and the Police Commissioner spoke publicly about the incident. An October 5, 2000 *Baltimore Sun* article quoted the Commissioner as accusing appellant of "a horrible breach of public trust," and saying that since becoming Commissioner in April 2000, he has "heard a lot from the public about false arrests and evidence being planted." The Commissioner also stated that, "If an innocent citizen is arrested and charged with possession of narcotics he did not possess, that's outrageous." The Mayor was quoted in the same article stating, "We said this city needs to do a better job policing our own police."

**5.** The Mayor publicly lashed out at the State's Attorney for dismissing the criminal charges against appellant. According to the January 26,

*more Sun* reported that the Commissioner had "held a news conference the day Sewell was arrested, Oct. 4, using the case to prove he was serious about targeting corruption." This article reprinted the Commissioner's previous characterization of appellant's alleged misconduct as "a horrible breach of the public trust," and quoted the Commissioner as stating that, "We are extremely disappointed in the State's Attorney's decision not to move forward with his [appellant's] case, but defer to their judgment in doing so," [and that the decision to drop the criminal case] "will certainly not deter the efforts of the ... Department in its commitment to root out corrupt police officers and to restore the integrity of the agency."

On October 17, 2001, appellant's attorney sent a letter to the Department's Chief Legal Advisor, citing the public comments made by the Commissioner and the Mayor, and requesting that the officers who would serve on appellant's hearing board be selected from another law enforcement agency. On October 23, 2001, the Chief Legal Officer denied that request.

### Judicial Proceedings

On October 29, 2001, appellant filed with the circuit court a Petition to Show Cause, requesting that the circuit court order that the members of the hearing board in appellant's case be

---

2001 edition of the *Baltimore Sun,* the Mayor made the following comments:

"I think the failing in these cases is to not go forward, and I'll be goddamned if we're going to stop doing integrity cases and doing stings just because we have a prosecutor who's afraid to go forward and try them," said [the Mayor], who has been critical of [the State's Attorney] in the past. "Maybe we'll find a prosecutor with a little bit of guts to go forward," he said. "I talked to her before she dropped this case ... begged her, pleaded with her and tried to persuade her to go forward with this case. She said, 'No, too many red herrings.' I think the poor woman must have been attacked by red herrings when she was a child. She sees red herrings everywhere.

[The Mayor] said he and the Police Department are considering finding a way to prosecute integrity cases without [the State's Attorney], if possible. *He also noted that Sewell has to appear before a departmental trial board.*

*"He's not going to serve in my Police Department," O'Malley said.* (Emphasis added).

selected from another law enforcement agency. The petition asserted that appellant would not be able to have a fair hearing because of the public comments made by the Mayor and the Commissioner. During the hearing on that petition, appellant's attorney stated:

> What I'm concerned about is when you have a three-member panel made up from the members of the ... Department ranking from major, lieutenant and someone of equal rank, which would be a police agent, when their boss and his boss have already come out and said he's guilty, I don't believe he can get a fair trial.

\* \* \*

> Whether intentionally or unintentionally these members have been with the police department, would like to get promoted within their police department, would like to get positions they would enjoy within their police department.

The circuit court responded by stating:

> I understand your point. Let's assume that the wiser course might be for the commissioner to exercise his discretion in the fashion you seek.

> What—in the statute what is there to require that he do so by my order? What gives me, empowers me to force him to exercise his discretion? I can say that your position is a wise one.

The circuit court ultimately denied appellant's petition, stating: "Well, I think that your cause here is not an unwise one, but I don't think I have the statutory authority to do, or the case law authority to do what you're proposing given the repercussions." The circuit court filed an order that concluded: "Because there is neither precedent nor law permitting a court to require the Commissioner to exercise his statutory discretion in a particular way, the Petition will be Denied." Appellant filed a notice of appeal on November 19, 2001.

## Administrative Proceedings

Appellant's administrative hearing began on November 1, 2001. As a preliminary matter, appellant's counsel moved that the members of the hearing board recuse themselves because of the pre-hearing publicity and the negative comments made by the Commissioner and the Mayor. The Department's counsel argued that the circuit court had already ruled on this issue. The hearing board's Chairperson denied appellant's request, stating that no BCPD member had put any pressure on him or on the board.

The hearing board proceeded to decide the merits of the administrative charges brought against appellant, and ultimately found appellant guilty of all five charges. The board also recommended that appellant's employment be terminated as a result of each guilty finding. On December 11, 2001, the Commissioner approved the board's recommendation, and terminated appellant's employment with the BCPD. Appellant filed a Petition for Judicial Review of that decision, but the circuit court has stayed that proceeding pending the outcome of this appeal.

## Discussion

### I.

The Law Enforcement Officers' Bill of Rights ("LEOBR"), Md.Code (1957, 1996 Repl.Vol.) art. 27, §§ 727–734D was enacted by the General Assembly " 'to guarantee that certain procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal.' " *Mass Transit Admin. v. Hayden,* 141 Md.App. 100, 107, 784 A.2d 627 (2001) (quoting *Abbott v. Administrative Hearing Bd.,* 33 Md.App. 681, 366 A.2d 756, *cert. denied,* 280 Md. 727 (1977)).

An officer who is aggrieved of a right protected by the LEOBR may petition the circuit court pursuant to the Md. Code Art. 27, § 734, which provides:

Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the

commencement of the hearing before the hearing board, either individually or through his certified or recognized employee organization, to the circuit court of the county where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded.

■ "The purpose of § 734 is to enforce the accused officer's rights under the Act, not to restrict the agency's legitimate right to discipline errant officers." *Cochran v. Anderson*, 73 Md.App. 604, 616, 535 A.2d 955 (1988). Officers have used a " § 734 proceeding" to seek relief from alleged deprivations of a variety of rights.[6]

The LEOBR defines "hearing board" as

A board which is authorized by the chief to hold a hearing on a complaint against a law enforcement officer and which consists of not less than three members, except as provided

---

**6.** *See Blondell v. Baltimore City Police Dep't*, 341 Md. 680, 672 A.2d 639 (1996) (officer challenging the BCPD's decision to add an additional charge against him after an initial offer of punishment was proposed); *Maryland State Police v. Zeigler*, 330 Md. 540, 625 A.2d 914 (1993) (officer requesting that the circuit court order a separate hearing board from other officers); *Baltimore Police Dep't v. Etting*, 326 Md. 132, 604 A.2d 59 (1992) (officer requesting that the circuit court order dismissal of charges because the statute of limitations had run); *Hagerstown v. Moats*, 81 Md.App. 623, 568 A.2d 1181 (1990), *aff'd*, 324 Md. 519, 597 A.2d 972 (1991) (officers requesting that the circuit court grant their right to utilize procedures in a collective bargaining agreement); *Baltimore City Police Dep't v. Andrew*, 318 Md. 3, 566 A.2d 755 (1989) (officer requesting that the circuit court prohibit the BCPD from proceeding with charges against him because the statute of limitations had run); *Cancelose v. Greenbelt*, 75 Md.App. 662, 542 A.2d 1288 (1988)(officer challenging the decision of the Greenbelt Police Department to terminate his employment without a hearing); *Chief, Montgomery County Dep't of Police v. Jacocks*, 50 Md.App. 132, 436 A.2d 930 (1981) (officer challenging the Montgomery County Police Department's refusal to give the officer access to statements made by witnesses); *Di Grazia v. County Executive for Montgomery County*, 288 Md. 437, 418 A.2d 1191 (1980) (former Director of the Montgomery County Police Department challenging the County Executives' decision to replace him without complying with the procedural safeguards of the LEOBR); *Moore v. Fairmount Heights*, 285 Md. 578, 403 A.2d 1252 (1979) (officer challenging the decision of the Fairmount Heights Police Department to terminate his employment without a hearing).

in paragraphs (2) and (3) of this subsection, all to be appointed by the chief and selected from law enforcement officers within that agency, *or law enforcement officers of another agency with the approval of the chief of the other agency, and who have had no part in the investigation or interrogation of the law enforcement officer.* At least one member of the hearing board shall be of the same rank as the law enforcement officer against whom the complaint has been filed.

Md.Code Art. 27, § 727(d)(1) (emphasis added).

 We must first decide whether the circuit court had the authority to order that the hearing board be comprised of members from a law enforcement agency other than the BCPD. Because the LEOBR does not specifically address this issue, we must apply the canons of statutory interpretation "to discern and effectuate the intent of the Legislature." *FOP, Montgomery County Lodge No. 35 v. Mehrling,* 343 Md. 155, 173–74, 680 A.2d 1052 (1996).[7] In *Mass Transit Admin. v. Hayden,* 141 Md.App. 100, 784 A.2d 627 (2001), an officer facing administrative charges requested that a hearing board issue a summons to an officer who was subsequently appointed chair of the hearing board. When the board denied that

---

7. "The words actually used in the statute, and their 'plain meaning' are the best indicator of that intent." *State Dep't of Assessments and Taxation v. Maryland–National Capital Park and Planning Comm'n,* 348 Md. 2, 11 n. 9, 702 A.2d 690 (1997). When a statute is silent about an issue, we should consider its purpose in construing it to address that issue. *See Papillo v. Pockets, Inc.,* 119 Md.App. 78, 87, 704 A.2d 448 (1997). "We construe the statute as a whole, interpreting each provision of the statute in the context of the entire statutory scheme." *Blondell v. Baltimore City Police Dep't,* 341 Md. 680, 691, 672 A.2d 639 (1996). The statute should be construed so as to avoid an "illogical or unreasonable result, or one which is inconsistent with common sense." *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986). "In ascertaining the intention of the Legislature, all parts of a statute are to be read together to find the intention as to any one part and ... all parts are to be reconciled and harmonized if possible." *Thomas v. Police Comm'r of Baltimore City,* 211 Md. 357, 361, 127 A.2d 625 (1956). "If there is no clear indication to the contrary, and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless or nugatory." *Id.*

request, the officer sought judicial relief pursuant to § 734. While appellant's § 734 proceeding was pending in the circuit court, (1) the board heard the officer's case, and rendered a recommendation, and (2) the police chief adopted that recommendation, suspending the officer. Thereafter, the circuit court decided the merits of the § 734 proceeding, concluded that the officer had the right under the LEOBR to the issuance of a summons, and therefore vacated the police chief's disciplinary order.[8]

█ This Court affirmed, concluding that (1) although not expressly stated in the LEOBR, § 734 grants the circuit court the authority to vacate an administrative decision that resulted from an improper denial of an officer's procedural rights, and (2) "[t]o moot a section 734 action because it is not resolved before the administrative hearing that it challenges would defeat the 'pre-hearing review' purpose of that statute." *Id.* at 112, 784 A.2d 627. In the case at bar, because a law enforcement officer facing departmental charges has the right to an impartial hearing board, the circuit court had the authority to determine whether this is a case in which the hearing board must be composed of members of another law enforcement agency. The circuit court erred in concluding that it did not have the authority to grant appellant's request.

## II.

Appellant argues that his due process rights [9] were violated when he was deprived of an impartial hearing board consisting

---

8. While seeking a stay is the "preferred approach," appellant was not required to seek a stay of the departmental charges hearing as a condition precedent to obtaining judicial relief in a § 734 proceeding. *Hayden, supra,* 141 Md.App. at 112–13, 784 A.2d 627.

9. Appellant contends that the due process clauses of the United States Constitution, amend. XIV and Article 24 of the Maryland Declaration of Rights were violated. The Fourteenth Amendment provides, in part, that "No State ... shall ... deprive any person of life, liberty, or property, without due process of law." Article 24 of the Maryland Declaration of Rights states:

**Article 24. Due Process.**

of members of a law enforcement agency other than the BCPD.[10] We agree with that argument. The Court of Appeals has repeatedly stated that procedural due process in an administrative hearing requires that the agency performing an adjudicatory function observe the basic principles of fairness. *Coleman v. Anne Arundel Police Department*, 369 Md. 108, 142, 797 A.2d 770 (2002); *Gigeous v. E. Corr. Inst.*, 363 Md. 481, 509, 769 A.2d 912 (2001); *Regan v. State Bd. of Chiropractic Exam'rs*, 355 Md. 397, 408, 735 A.2d 991 (1999); *Maryland State Police v. Zeigler*, 330 Md. 540, 559, 625 A.2d 914 (1993).

The Court of Appeals has stated that in an administrative proceeding,

"[d]ue process ... is not a rigid concept .... '[it] is flexible and calls only for such procedural protections as the particular situation demands.'" *Roberts [v. Total Health Care, Inc.]*, 349 Md. [499] at 509, 709 A.2d [142] at 147 [1998] (quoting *Dep't of Transp. v. Armacost*, 299 Md. 392, 416, 474 A.2d 191, 203 (1984)). We explained that "in determining what process is due, the Court will balance the private and government interests affected." *Id.* (internal quotation marks omitted) (citation omitted). In this regard, we apply the following balancing test developed by the Supreme Court in *Mathews [v. Eldridge]*, 424 U.S. [319] at 335, 96 S.Ct. at 903, 47 L.Ed.2d 18 [ (1976) ], to assist us in our endeavor:

Identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the

---

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

**10.** To establish a procedural due process violation one must first show that state action resulted in depriving a person's property interest. *Regan v. Board of Chiropractic Exam'rs*, 120 Md.App. 494, 510, 707 A.2d 891 (1998), *aff'd*, 355 Md. 397, 735 A.2d 991 (1999). Here, appellant, an eight year member of the BCPD, had a property interest in his employment.

private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest,. including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Coleman, supra,* 369 Md. at 142–43, 797 A.2d 770. Section 727(d)(1) [11] specifically allows a hearing board to be composed of "law enforcement officers of another agency with the approval of the chief of the other agency." It is obvious that the deliberate selection of a hearing board that is biased against an officer would constitute a violation of the procedural safeguards required by the due process clause. From our application of the *Mathews* test to the facts of the case at bar, we are persuaded that appellant's right to due process was violated by the selection of a hearing board comprised of BCPD officers.

This is a case in which there is great value in selecting a hearing board comprised of members from another law enforcement agency. No reasonable person would challenge the proposition that, whatever the outcome, the fact that the hearing board is comprised of members from another agency would bolster public confidence in the board's decision. There can be no doubt that an overwhelming majority of BCPD officers wish to continue working for the Department, wish to be promoted and/or avoid being assigned to undesirable duties. Given the intense publicity about the statements made by the Commissioner and by the Mayor who appointed him, it is much more likely so than not so that any BCPD officer chosen to serve on appellant's hearing board would be inclined to find against appellant.

---

11. This provision of the LEOBR recognizes that there are cases in which a board composed of members from another agency should be utilized. Appellant was entitled to enforce this right.

The Department does not have a particularly strong interest in trying appellant before members of the BCPD. While it is obvious that the Department has an interest in rooting out corrupt officers, all police forces share this interest. The cost of utilizing members from another agency would be minimal. This procedure would simply involve a request to another agency, and approval by that agency's chief.

"It is elementary that 'a fair trial in a fair tribunal is a basic requirement of due process.'" *Weiss v. United States*, 510 U.S. 163, 178, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). "Irrespective of whether a defendant be guilty or innocent, under our system of law, he or she is entitled to a fair trial." *Curry v. State*, 54 Md.App. 250, 259, 458 A.2d 474 (1983). "A necessary component of a fair trial is an impartial judge." *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927).[12] In the context of a motion for recusal filed in an administrative proceeding, the Court of Appeals has stated:

In determining whether there is either actual bias or an appearance of impropriety on the part of a decision maker in a judicial or quasi-judicial proceeding, we begin with the

---

**12.** In *AEP Chapter Housing Ass'n v. Berkeley*, 114 F.3d 840 (9th Cir. 1997), the United States Court of Appeals for the Ninth Circuit noted that:

*Tumey v. Ohio* ... and its progeny establish two main categories of due process challenges based on structural bias. First, due process is violated if a decisionmaker has a "direct, personal, substantial pecuniary interest" in the proceedings. [273 U.S.] at 523,[ 47 S.Ct. 437] ... Second, even if the decisionmaker does not stand to gain personally, due process may also be offended where the decisionmaker, because of his institutional responsibilities, would have "so strong a motive" to rule in a way that would aid the institution. *Id.* at 532[, 47 S.Ct. 437.]

*Id.* at 844. Rare are the occasions on which an officer will be able to establish that, under the "so strong a motive test," the officer is entitled to a hearing board comprised of officers from another agency. In the case at bar, however, we are persuaded that any BCPD officer serving on the hearing board would have a very strong motive to make findings of fact and recommendations that are consistent with the Commissioner's public comments about appellant's alleged misconduct.

presumption of impartiality. As Judge Bell observed for the Court in *Jefferson–El v. State,* 330 Md. 99, 107, 622 A.2d 737, 741 (1993),

"There is a strong presumption in Maryland . . . and elsewhere . . . that judges are impartial participants in the legal process, whose duty to preside when qualified is as strong as their duty to refrain from presiding when not qualified. . . . The recusal decision, therefore, is discretionary . . . and the exercise of that discretion will not be overturned except for abuse."

The Court in *Jefferson–El,* 330 Md. at 107–108, 622 A.2d at 741, went on to discuss "the proper test to be applied" in determining whether there is an "appearance of impropriety," and quoted from *Boyd v. State,* 321 Md. 69, 86, 581 A.2d 1, 9 (1990), where the Court stated:

" 'The test to be applied is an objective one which assumes that a reasonable person *knows and understands all the relevant facts.* . . . We disagree with our dissenting colleague's statement that recusal based on an appearance of impropriety . . . "requires us to judge the situation from the viewpoint of the reasonable person, and not from a purely legalistic perspective." Like all legal issues, judges determine appearance of impropriety—not by what a straw poll of the only partly informed man-in-the-street would show—but by examining the record facts and the law, and deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge.' " (Quoting *In Re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989)). *See also, e.g., Surratt v. Prince George's County,* 320 Md. 439, 468, 578 A.2d 745, 759 (1990) ("Using an objective standard precludes the necessity of delving into the subjective mindset of the challenged judge"); *In re Turney,* 311 Md. 246, 253, 533 A.2d 916, 920 (1987) ("The test generally used in the application of [the] standard is an objective one—whether a reasonable member of the public knowing all the circumstances would be led to

the conclusion that the judge's impartiality might reasonably be questioned").

*Regan, supra,* 355 Md. at 411, 735 A.2d 991. The United States Supreme Court has stated:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that *"every procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law."* *Tumey v. Ohio,* 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. *But to perform its high function in the best way "justice must satisfy the appearance of justice."* *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11.

*In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (emphasis added).

In the wake of the IAIU's sting operation, the Mayor made it clear he wanted appellant fired: "He's not going to serve in my Police Department." The Commissioner also spoke publicly about his disappointment that the State's Attorney Office did not proceed with appellant's criminal charges. From those public statements made and the facts of this case, it is highly probable that any Baltimore City Police Officer would find against appellant if chosen to serve on his hearing board. The appearance of justice was simply not satisfied by the selection of a hearing board comprised of BCPD officers. Appellant is therefore entitled to a new hearing before a board

comprised of law enforcement officers who are not members of the BCPD.

**JUDGMENT DENYING APPELLANT'S PETITION REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR ENTRY OF AN ORDER THAT VACATES THE DEPARTMENT'S ORDER TERMINATING APPELLANT'S EMPLOYMENT AND THAT REMANDS APPELLANT'S DEPARTMENTAL CHARGES TO THE DEPARTMENT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**