42 A.3d 686

**Salvatore RIVIERI**

v.

**BALTIMORE POLICE DEPARTMENT.**

**No. 35, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

April 27, 2012.

**664**

Michael Marshall (Schlachman, Belsky & Weiner, PA, on the brief), Baltimore, MD, for appellant.

Mark H. Grimes, Chief Legal Counsel (Baltimore City Law Department Legal Affairs Division, on the brief) Baltimore, MD, for appellee.

Panel: EYLER, JAMES R., WRIGHT and LAWRENCE F. RODOWSKY (Retired, specially assigned), JJ.

EYLER, J.

This appeal arises out of the termination of Salvatore Rivieri, appellant, from the Baltimore Police Department ("the Department"), appellee, by Police Commissioner Frederick H. Bealefeld, III ("the Commissioner"). Pursuant to its powers under Maryland Code (2011 Repl.Vol.) §§ 3–107 and 3–108 of the Public Safety Article ("P.S."), an administrative hearing board found appellant guilty of failure to write a miscellaneous incident report and failure to issue a contact receipt, stemming from an incident which occurred at the Inner Harbor in the summer of 2007. The hearing board recommended that appel-

lant receive a simple letter of reprimand, a six day suspension, and a loss of six days of accrued leave. On August 25, 2010, the Commissioner increased the hearing board's recommended sanction and terminated appellant from the Department, pursuant to his power under P.S. § 3–108(d). On August 27, 2010, appellant filed a Petition for Judicial Review in the Circuit Court for Baltimore City. The court affirmed the Commissioner on February 28, 2011. This timely appeal, based on the Law Enforcement Officers' Bill of Rights (LEOBR), followed. For the reasons set forth below, we shall affirm.

## Factual and Procedural Background

Sometime in the summer of 2007, appellant was on duty patrolling the Baltimore Inner Harbor. He observed several juveniles riding their skateboards near posted signs indicating that skateboarding was prohibited. Appellant told the juveniles they were not allowed to skateboard in that area. After this admonition, appellant observed at least one individual continuing to skateboard. Appellant directly spoke with one of the juveniles, Eric Bush, and instructed Mr. Bush to give appellant Mr. Bush's skateboard. When Mr. Bush refused to hand over the skateboard, appellant took Mr. Bush to the ground. Mr. Bush attempted to get up from the ground, but appellant pushed him back down on the ground with an open hand. Mr. Bush's friend videotaped the encounter and later posted it on the internet website "YouTube." National media reported on the incident.

As a result of this incident, on June 15, 2009, the Department charged appellant with five violations of the Baltimore Police Department General Orders. The first charge included eight counts of conduct unbecoming a member of the Baltimore Police Department, including unnecessary use of force, assault, use of profane language, failure to issue Mr. Bush a Citizen/Police Contact Receipt, and failure to submit a Miscellaneous Incident Report to appellant's supervisor. The second charge included two counts of unnecessary force and/or violence. The third charge again included a count of failure to

submit a Miscellaneous Incident Report. The fourth charge again included a count of failure to issue Mr. Bush a Citizen/Police Contact Receipt. The fifth and final charge included two counts of neglect of duty, comprised again of one count of failure to submit a Miscellaneous Incident Report and one count of failure to issue Mr. Bush a Citizen/Police Contact Receipt.

The Department assembled an administrative hearing board to adjudicate these charges on July 15 and 16, 2010. The board found appellant guilty of charges one, three, four, and five solely on his failure to write a Miscellaneous Incident Report and his failure to issue Mr. Bush a Citizen/Police Contact Receipt. The board found appellant not guilty of all charges relating to his use of force, language, or demeanor during this incident. The board recommended that appellant receive a simple letter of reprimand, a six day suspension, and the loss of six days of accrued leave. On August 25, 2010, however, the Commissioner terminated appellant as a result of this incident, reasoning that:

> In light of Officer Rivieri's conduct, as seen on the CD of the YouTube footage, his ability to interact effectively with the citizens of Baltimore has been seriously compromised. Based upon the conduct observed in the video, I have significant doubts about Officer Rivieri's ability to carryout [sic] the Department's mission for improved community relations. His conduct, as captured on video, has brought discredit upon and undermined the public confidence in Officer Rivieri and the Baltimore Police Department, on a local, national, and even international scale.

> This incident—had this incident not been captured on video and because of Officer Rivieri's failure to author any reporting, whatsoever, his conduct, as serious as it was, may have gone unnoticed and/or unreported. This failure left our Department completely unprepared to deal with the media firestorm and public outcry that ensued once the video surfaced on YouTube. Officer Rivieri's failure to report his action is tantamount to trying to conceal his conduct and will not be tolerated.

Despite Officer Rivieri's testimony to the contrary, the Trial Board found that he did not issue a Contact Receipt. Officer Rivieri's conduct reflects negatively on his viability as an effective prosecution witness, in light of the significant media and public attention the footage has garnered. I have given your statements in this case my full consideration.

We shall include additional facts when we discuss the issues.

## Question Presented

As phrased by appellant, the following questions are presented for our review:

1. Is a police agency head's increase of a trial board's recommended punishment of an officer based on allegations for which the officer was found not guilty a violation of the Law Enforcement Officers' Bill of Rights?

2. Does a police agency head's reliance on an impermissibly vague general order violate a police officer's due process rights?

3. Is retaliating against an officer for exercising rights guaranteed under the Law Enforcement Officers' Bill of Rights improper?

## Standard of Review

Appellate review of an administrative agency's decision to terminate an employee is limited:

"As long as an administrative sanction or decision does not exceed the agency's authority, is not unlawful, and is supported by competent, material and substantial evidence, there can be no judicial reversal or modification of the decision based on disproportionality or abuse of discretion unless, under the facts of a particular case, the disproportionality or abuse of discretion was so extreme and egregious that the reviewing court can properly deem the decision to be 'arbitrary or capricious.'"

*Md. Transp. Auth. v. King,* 369 Md. 274, 291, 799 A.2d 1246 (2002). We review an agency's decision "in the light most

favorable to it" and its decision is "prima facie correct and presumed valid." *Md. Aviation Admin. v. Noland,* 386 Md. 556, 573 n. 3, 873 A.2d 1145 (2005) (internal citations omitted).

## Discussion

The Commissioner lawfully increased the hearing board's recommended punishment based upon "substantial evidence" supporting the board's findings of appellant's guilt. There is no evidence that the Commissioner was improperly motivated by media coverage of the incident. The Commissioner's statements prior to the board's hearing did not violate appellant's due process rights. The Commissioner was not required to follow the Disciplinary Matrix, and he did not unlawfully retaliate against appellant for exercising his right to a hearing.

### 1. The Commissioner's Power to Increase a Recommended Sanction

First, appellant claims that the Commissioner's decision to terminate appellant violated appellant's rights under the LEOBR because the Commissioner 1) improperly based his decision on actions for which appellant was found not guilty by the hearing board; 2) did not support his decision on the record with "substantial evidence"; 3) was improperly motivated by media coverage of the incident; and 4) improperly expressed judgments about the case prior to the hearing, thereby frustrating appellant's due process rights. Appellant then asserts that in the face of such a violation, he is entitled to both reinstatement and back pay. We shall discuss each argument in turn.

### A. The Commissioner's Decision was Not Based on Not Guilty Findings

██ First, appellant alleges that the Commissioner's decision to terminate appellant was not based on the hearing board's finding of guilt for failure to submit a Miscellaneous Incident Report or issue Mr. Bush a Citizen/Police Contact Receipt but rather on conduct for which appellant had been found not guilty by the board. Specifically, Appellant argues

that, in his statement, the Commissioner repeatedly referenced appellant's "conduct" as seen on the YouTube video, even though the hearing board found appellant not guilty of any misconduct based on his language, behavior, or use of force. Appellant states that the Commissioner's decision was arbitrary and capricious, especially in light of the fact that appellant was 13 months away from being eligible to retire with pension benefits and that the Department had never before lodged administrative charges against him.

The Department responds that the hearing board's recommendation of sanction was not binding on the Commissioner. The Department argues that the Commissioner based his decision on the fact that the Department was unprepared to deal with the media fallout from the incident because of appellant's failure to document the encounter. The Commissioner also cited his concern that appellant would be an easily impeachable prosecution witness in the future due to his claim that he had in fact issued a Citizen/Police Contact receipt.

Appellant is correct that the Commissioner cannot overturn the hearing board's factual findings of guilt or non-guilt. *See* P.S. § 3–108(a)(3). Nevertheless, "[t]he recommendation of a penalty by the hearing board is not binding on the chief." P.S. § 3–108(d)(3). Thus, it follows that the Commissioner was able to increase the hearing board's recommended sanction, as long as he based his decision on violations for which appellant was found guilty. *See Coleman v. Anne Arundel County Police Dep't,* 369 Md. 108, 147, 797 A.2d 770 (2002) ("if the hearing board recommends the imposition of a disciplinary sanction, the chief of police makes the final determination whether to impose punishment based upon the findings, conclusions, and recommendations of the hearing board.").

In determining a sanction, the Commissioner was entitled to consider the guilty findings in the context of the totality of the circumstances. The Commissioner was entitled to consider the conduct displayed in the video in determining the egregiousness of the failure to report in this situation. The Commissioner's repeated references to the video were all

given in relation to his doubts about appellant's future ability to work with the public and the public opinion of the department, both of which, he concluded, were significantly affected by the fact that appellant did not report the actions captured in the video. Although the Commissioner could not overrule the hearing board's not guilty findings, he did not do so here.

Appellant also claims that because the Commissioner stated that "Officer Rivieri's failure to report his action is tantamount to trying to conceal his conduct and will not be tolerated," the Commissioner improperly found appellant guilty of making a "false statement or misrepresentation" even though appellant was never charged with violating this rule. On the contrary, this statement helps explain why, based on all the facts in this case, the Commissioner chose to sanction a failure to report an incident so harshly.

Based on the statements provided in the record, we cannot find that the Commissioner abused his discretion in such an extreme or egregious way that the resulting sanction was arbitrary or capricious, even in light of appellant's strong employment record and his proximity to pension benefits. We are unable to reverse the Commissioner's decision.

B. The Commissioner's Decision is Supported by "Substantial Evidence"

■ Next, appellant contends that his rights were violated under the LEOBR because the Commissioner's decision to terminate him was not based on "substantial evidence." Appellant cites P.S. § 3–108(d)(5)(iv), which provides that the Commissioner may only increase the trial board's recommended penalty if, among other things, he personally "states on the record the substantial evidence relied on to support the increase of the recommended penalty."

Here, appellant does not argue that the Commissioner did not provide reasons for the termination on the record, but instead argues that the reasons given and evidence cited was not sufficiently "substantial" to justify increasing the recommended sanction. Appellant argues that the Commissioner's

decision was "based upon his own opinions, doubts, and speculation that were formed after observing various media reports of the incident." Appellant argues that there was no evidence introduced at the hearing reflecting how appellant is now unable to interact with the public or carry out the Department's mission for improved community relations. He also claims that there was no evidence in the record that the Department was unprepared to manage the media attention due to appellant's failure to report the incident or that the Department would have behaved any differently had appellant reported the incident. Appellant also states that there was no evidence of any "local, national, and even international" outcry over the incident. Finally, appellant argues that there is no evidence that he could no longer serve as a witness for the State in criminal cases.

There are no reported cases which elaborate upon the concept of "substantial evidence" in this context. In *VanDevander v. Voorhaar*, the Sheriff increased the hearing board's recommended punishment for an officer's use of excessive force to termination. 136 Md.App. 621, 624, 767 A.2d 339 (2001). We vacated the Sheriff's termination order because he did not "state on the record the substantial evidence relied on to support the increase of the recommended penalty," as required under the predecessor provision to P.S. 3–108(d)(5)(iv). *Id.* at 631, 767 A.2d 339. In that case, the Sheriff had asserted "his reliance on the administrative hearing board's finding of guilt," but because we had otherwise found that the hearing board's finding of guilt was not based on substantial evidence, this was not deemed sufficient to support an enhanced penalty. *Id.*

Unlike in *VanDevander*, appellant is not challenging the findings or conclusions of the hearing board and, thus, concedes that the guilty findings were based upon substantial evidence. Thus, *VanDevander* provides little guidance for determining whether a Commissioner's decision to increase a punishment is based upon substantial evidence if the underlying findings of the trial board are uncontested. In other areas

of administrative law, a court may find that an administrative decision was based on "substantial evidence" when it determines that "a reasoning mind reasonably could have reached the factual conclusion that the agency reached." *Eberle v. Baltimore County,* 103 Md.App. 160, 166, 652 A.2d 1175 (1995) (*quoting Hill v. Baltimore County,* 86 Md.App. 642, 659, 587 A.2d 1155 (1991)). An administrative decision must be "sustainable on the agency's findings and for the reasons stated by the agency." *United Steelworkers of America, Local 2610 v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62 (1984).

There was substantial evidence to support the conclusion that appellant lacked the "ability to interact effectively with the citizens of Baltimore" and "ability to carryout [sic] the Department's mission for improved community relations," based on the guilty findings themselves. Appellant failed to provide a Citizen/Police Contact Receipt to Mr. Bush in direct violation of Baltimore Police Department General Orders. It is reasonable for the Commissioner to presume that violating a provision that deals specifically with interacting with the public reflects negatively on appellant's ability to interact with the public and improve community relations.

The Commissioner's statement that the officer's conduct brought "discredit upon and undermined public confidence in Officer Rivieri and the Baltimore Police Department on a local, national, and even international scale" is also supported by substantial evidence. The hearing board noted that 1) "the incident has generated a great deal of media attention;" 2) "the National Media has reported on the incident;" and 3) "[v]ideo footage of the incident was on YouTube." Appellant argues that this is insufficient evidence of any malcontent against appellant or the Department because "the nature or content of this media was not made part of the record." It was entirely reasonable, however, for the Commissioner to presume that, based on a totality of the circumstances, such widespread media attention was due to the controversial nature of the incident involved. Additionally, appellant and his counsel acknowledged during the meeting with the Commissioner that there was significant media attention as a result of

the incident and that the incident brought disfavor upon the Department. Furthermore, during the board hearing, the Department introduced a letter from a teacher in Norway stating that his students were upset by the video.

Relatedly, appellant also alleges that there was no evidence in the record that the Commissioner or the Department were "ambushed" by the media and were unprepared to handle the situation due to appellant's failure to file an incident report. Although appellant did raise the general "substantial evidence" issue in his initial brief, he did not set forth this specific argument until his reply brief. Reply briefs are typically limited to responding to arguments made in appellee's brief, not injecting new issues. *Gazunis v. Foster*, 400 Md. 541, 554, 929 A.2d 531 (2007). Appellate courts typically do not consider arguments first made in the reply brief. *Id.*

Nevertheless, it was reasonable for the Commissioner to infer that, had the Department been notified of the incident prior to the YouTube video being posted to the public, it would have been more prepared for the media attention that came afterwards. It would be almost impossible, and tantamount to speculation, for the Department to present concrete evidence of what it would have done differently had the Department received a report of the incident beforehand. The "substantial evidence" test does not subject the Commissioner to such an exacting standard. Finally, even if the Commissioner's inference would not alone constitute sufficient "substantial evidence" to merit an increased sanction, it was not an impermissible consideration, and thus, the Commissioner was entitled to consider it as part of the totality of the circumstances in coming to his decision.

The Commissioner's concern with the viability of appellant as an effective witness was also based upon substantial evidence: the Commissioner clearly stated that "despite Officer Rivieri's testimony to the contrary, the Trial Board found that he did not issue a Contact Receipt." It was reasonable for the Commissioner to determine that evidence that appellant had lied during an administrative hearing would negatively impact

his ability to be a convincing State's witness during cross examination. Indeed, it is unclear what more should be required for the Commissioner to reasonably come to this conclusion.

The Commissioner did not have to review the findings of appellant's guilt in a vacuum. The Commissioner's decision was based on substantial evidence, and we affirm.

## C. The Commissioner's Decision was Not Improperly Based on Media Coverage

Appellant also contends that the Commissioner was overly influenced by media coverage of the incident, citing his frequent references to "YouTube," the "video," and media coverage. However, aside from the argument that the Commissioner did not base his termination decision on "substantial evidence," it is unclear how, according to appellant, the Commissioner erred. Appellant is not charging that the Commissioner did not disclose in writing "any oral or written communication not included in the record of the hearing board on which the decision to consider increasing the penalty is wholly or partly based" as required under P.S. § 3–108(5)(iii) or that the Commissioner did not review "the entire record of the proceedings of the hearing board" as required under P.S. § 3–108(5)(i). There are no ascertainable rules indicating to what extent the Commissioner may be influenced by media coverage in making his decision. In any event, the Commissioner properly stated on the record the substantial evidence relied on to support the increased sanction.

## D. The Commissioner Did Not Pre-judge this Case

Finally, appellant argues that the Commissioner voiced his opinion prior to appellant receiving a formal hearing on the matter, violating appellant's right to due process as provided under the LEOBR. Specifically, appellant points to a letter sent by the Commissioner on March 3, 2008 in which the Commissioner stated that appellant behaved "in a way that is not acceptable and not consistent with the principles of the Baltimore Police Department" and that "[h]e could have and

should have handled the incident in a more professional manner." Appellant also points to a statement made by the spokesman of the Department to the Baltimore Sun, who noted that "[i]t's not behavior that's acceptable and encouraged within the police department."

Appellant cites *Sewell v. Norris*, 148 Md.App. 122, 811 A.2d 349 (2002), for the proposition that a Commissioner can violate a police officer's due process rights by making remarks to the media prior to the accused officer's board hearing. In that case, we held that, due to the Commissioner's remarks, the accused officer's hearing was not fair and impartial and did not comport with due process requirements under the LEOBR. The Court reasoned that "[i]t is obvious that the deliberate selection of a hearing board that is biased against an officer would constitute a violation of the procedural safeguards required by the due process clause" and that "[g]iven the intense publicity about the statements made by the Commissioner and by the Mayor who appointed him, it is much more likely so than not so that any BCPD officer chosen to serve on appellant's hearing board would be inclined to find against appellant." 148 Md.App. 122, 136, 811 A.2d 349 (2002).

Unlike in *Sewell,* appellant never challenged the impartiality of the members of the hearing board and in fact admits that he is not challenging the findings or recommendations of the hearing board. Thus, the holding in *Sewell* is distinguishable from this case. Furthermore, there is no evidence that the Commissioner's statements affected his own determination of an increased punishment.

Because we are affirming the administrative decision of the Department, we need not examine whether appellant would be entitled to reinstatement and back pay if his rights had in fact been violated.

### 2. *Due Process Rights*

Appellant also argues that his due process rights under the LEOBR were violated either because 1) the Commissioner relied upon the guidelines established by the Baltimore City

Police Department Disciplinary Matrix, General Order C–10 (Feb. 20, 2002) ("the Matrix"), which appellant argues are impermissibly vague and duplicative; or 2) the Commissioner's decision to terminate was not in fact within the guidelines established by the Matrix. However, the Matrix itself states that "[i]t is emphasized that the Disciplinary Matrix is a guideline" and that "[t]he Police Commissioner retains final authority regarding any punishment and is not restricted by the Disciplinary Matrix." Thus, even if we were to find the Matrix to be vague and duplicative, and we do not, it has no bearing on this case. For the same reason, the Commissioner's use or disregard of the Matrix cannot amount to an abuse of discretion in increasing appellant's sanction to termination.

### 3. Retaliation

■ Finally, appellant argues that the Commissioner unlawfully retaliated against appellant for exercising his right to a hearing under P.S. § 3–107(a). Appellant notes that the Department offered appellant a penalty of a 90 day suspension without pay if he pled guilty to all administrative charges prior to the board hearing. Appellant declined the offer, and then the board recommended a simple letter of reprimand, six day suspension, and a six day loss of leave. Appellant argues that the Commissioner's increase from not only the hearing board's recommendation but also from the initial offer given by the Department shows that he retaliated against appellant for exercising his right to a hearing.

Pursuant to P.S. § 3–103(d),

> a law enforcement officer may not be discharged, disciplined, demoted, or denied promotion, transfer, or reassignment, or otherwise discriminated against in regard to the law enforcement officer's employment or be threatened with that treatment because the law enforcement officer (1) has exercised or demanded the rights granted by this subtitle; or (2) has lawfully exercised constitutional rights.

Appellant has the burden to show that the exercise of his right to a hearing was a "substantial or motivating factor" in the Commissioner increasing the trial board's recommended sanc-

tion to termination. *Blondell v. Baltimore City Police Dep't,* 341 Md. 680, 698, 672 A.2d 639 (1996). If appellant satisfies that burden, the Department must prove by a preponderance of the evidence that the Commissioner would have terminated appellant even absent appellant exercising his right to a hearing. *Id. See also Di Grazia v. County Executive for Montgomery County,* 288 Md. 437, 418 A.2d 1191 (1980). In other words, appellant may only have a successful claim of retaliation if "he would have been reemployed but for the protected conduct." *Di Grazia,* 288 Md. at 448, 418 A.2d 1191.

In *Blondell,* a Baltimore City police officer was charged with general misconduct for fabricating a sexual harassment complaint. 341 Md. at 681, 672 A.2d 639. The Department offered punishment consisting of a severe letter of reprimand and loss of vacation leave if he agreed to forego his right to a hearing. *Id.* at 686, 672 A.2d 639. The officer rejected the offer, and then the Department added a false statements charge. *Id.* at 686–87, 672 A.2d 639. The Court of Appeals held that the additional charge was not retaliatory because the rejection of the offer was not a "substantial or motivating factor" in the Department's decision to add the charge. *Id.* at 702, 672 A.2d 639. The Court reasoned that the timing of the decision, adding a charge after the officer exercised his rights, was not sufficient evidence to establish retaliation. *Id.*

Similar to *Blondell,* the timing of the Commissioner's decision to increase appellant's punishment to termination is not sufficient evidence to establish retaliation. Appellant has offered no evidence to establish that the Commissioner's decision was motivated by appellant's refusal of the Department's initial offer of punishment. Contrary to appellant's assertion, there is no evidence that the Department indicated that a 90 day suspension without pay would be sufficient for a guilty finding of all charges; instead, it was merely an offer in order to encourage appellant to plead guilty to the administrative charges prior to a hearing. The fact that the punishment was later increased is not sufficient evidence of retaliation. The Department's decision was not arbitrary or capricious, and we affirm.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.